UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MORRIS & DICKSON CO., LLC, | |
| Plaintiff, | 18-cv- |
| v. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| JEFFERSON B. SESSIONS, III, UNITED STATES DEPARTMENT OF JUSTICE, UTTAM DHILLON, UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, and THE UNITED STATES OF AMERICA | |
| Defendants. | |

Plaintiff Morris & Dickson Co., LLC ("Morris & Dickson" or the "Company"), as and for its complaint against Defendants Jefferson B. Sessions, III, in his official capacity as Attorney General of the United States, the United States Department of Justice, Uttam Dhillon, in his official capacity as Acting Administrator of the Drug Enforcement Administration, the United States Drug Enforcement Administration ("DEA," and collectively, the "Defendants"), and the United States of America, hereby alleges, based on knowledge as to its own conduct, and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This action arises from DEA's attempt to subject Morris & Dickson to an unconstitutional administrative proceeding before a DEA Administrative Law Judge

("ALJ"). Defendants issued an Order to Show Cause and Immediate Suspension of Registration compelling Morris & Dickson to participate in an unlawful adjudicative process before a DEA ALJ appointed in violation of Article II of the United States Constitution. In the event that these unlawful DEA proceedings result in adverse findings against Morris & Dickson, the DEA ALJs' findings would be given substantial deference, entrenching the harm caused by the DEA's unconstitutional proceedings.

2.    The United States Supreme Court has found that an ALJ appointment process nearly identical to that used by DEA is unconstitutional. DEA, however, has done nothing to conform its ALJ appointment process to constitutional requirements. Moreover, statutory restrictions on an ALJ's removal violate the President's Article II executive power. DEA nonetheless continues to seek to compel Morris & Dickson to participate in an unconstitutional DEA administrative proceeding. Morris & Dickson seeks declaratory and injunctive relief to prevent the irreparable harm it would suffer if subjected to such an unconstitutional proceeding.

3.    The pending DEA administrative proceeding against Morris & Dickson is not authorized by law and violates constitutional separation of powers principles. Specifically, DEA's administrative enforcement scheme is unconstitutional on multiple grounds. First, DEA ALJs are not appointed in accordance with Article II, Section 2, Clause 2 of the United States Constitution ("the Appointments Clause"). Second, statutory prohibitions regarding the removal of DEA ALJs violate Article II's constitutional requirement by infringing the President's executive power and his obligation to faithfully execute the law.

4. DEA ALJs are executive "officers" for purposes of Article II's Appointments Clause. They hold continuing positions, established by law, in which they exercise significant authority and discretion presiding over DEA administrative hearings and adjudicating adversarial enforcement proceedings.

5. Under the Appointments Clause, inferior Article II "officers" such as DEA's ALJs must be appointed either by the President or the Head of their Department, the Attorney General of the United States. DEA ALJs, however, are appointed by neither. Rather, all three DEA ALJs—including the DEA ALJ presiding over Morris & Dickson's administrative hearing—were selected from a pool of candidates provided by the White House Office of Personnel Management and appointed by the DEA Administrator upon recommendation from DEA's Chief ALJ.

6. In June 2018, the United States Supreme Court confirmed that this ALJ appointment process is unconstitutional. Although the Court's decision specifically addressed the appointment of ALJs for the Securities and Exchange Commission ("SEC"), its reasoning equally applies to the selection and appointment process employed by DEA with respect to all three of its ALJs. The Solicitor General explicitly acknowleged this fact in a memorandum addressed to all agency general counsels made public following the Supreme Court's decision in *Lucia*. In that memorandum, the Solicitor General stated that "SEC ALJs, and other ALJs who exercise similar powers, are inferior officers and must be appointed as such." Guidance on Administrative Law Judges after *Lucia v. SEC* (S. Ct.), Office of the Solicitor General, July 23, 2018, *available at* https://static.reuters.com/resources/media/editorial/20180723/ALJ--SGMEMO.pdf.

7. The framework for removal of DEA's ALJs is similarly unconstitutional. Article II, Section 1, Clause 1 of the United States Constitution vests the executive power, including the specific power to faithfully execute the laws of the United States, in the President. The Supreme Court has held that, because the executive power is vested in the President, Article II requires officers such as ALJs to be answerable to the President, and not separated from the President by attenuated chains of accountability. Statutory prohibitions found in Sections 7521(a) and 1202(d) of Title 5 of the United States Code prevent the President and Attorney General from removing DEA ALJs. Rather, they may be removed only for "good cause" as "determined" by the Merit Systems Protection Board ("MSPB"), whose members themselves can only be removed by the President on certain limited "good cause" grounds. This scheme violates Article II by unconstitutionally imposing two layers of protections between the President (or Attorney General) and his inferior officer ALJs, thereby depriving the President (or Attorney General) from exercising his executive oversight duties.

8. This Court offers Morris & Dickson its only opportunity for meaningful judicial review that could prevent a deprivation of its constitutional rights. Morris & Dickson cannot wait until a DEA ALJ conducts a hearing and reaches a determination before seeking review in an Article III court, because Morris & Dickson would then have already suffered a constitutional harm. Morris & Dickson thus seeks protection from an illegal and unconstitutional proceeding.

9. Declaratory and injunctive relief is necessary and appropriate here. The DEA ALJ appointment and removal processes are unconstitutional. Requiring Morris & Dickson to continue to participate in the pending administrative process and defend itself

-5-

in an adversarial hearing before a DEA ALJ would deprive Morris & Dickson of its right to proceed before a constitutionally valid hearing officer and cause it to suffer irreparable harm from unconstitutional governmental action.  The relief sought is necessary to preserve Morris & Dickson's constitutional rights

## THE PARTIES

10.     Plaintiff Morris & Dickson is a Louisiana corporation with its principal place of business in Shreveport, Louisiana.  Morris & Dickson is a family-owned and operated drug distribution company that was founded in 1841.  It is registered as a DEA distributor in two locations under DEA registration numbers RM033572 (Jefferson location) and RM0314790 (Shreveport location).

11.     Defendant Jefferson B. Sessions, III, is the Attorney General of the United States, and the head and principal officer of the United States Department of Justice.  He is sued in his official capacity.

12.     Defendant United States Department of Justice is an executive department of the United States, headquartered in Washington, D.C.

13.     Defendant DEA is a federal agency, headquartered in Washington, D.C., within the United States Department of Justice.

14.     Defendant Uttam Dhillon is the Acting Administrator of DEA.  He is sued in his official capacity.

15.     Defendant United States of America is named in accordance with 5 U.S.C. § 702.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1346 because this action arises under the Constitution and laws of the United States concerning commercial regulation. The United States has waived its sovereign immunity from this lawsuit in 5 U.S.C. § 702. It has also weived its sovereign immunity through the federal common law principle of nonstatutory review. *See Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902).

17. Venue is proper in this district under 28 U.S.C. § 1391(e) because (i) one or more Defendants is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or is an agency of the United States, or is the United States and (ii) Plaintiff resides in this District and no real property is involved in the action.

## BACKGROUND

18. Morris & Dickson is a DEA-registered wholesale drug distribution company headquartered in Shreveport, Louisiana. Founded in 1841—it remains a family owned and operated business, and is now the sole remaining independently owned and privately held full-line drug wholesale distributor in the nation. Morris & Dickson holds two DEA licenses: one for its single operational distribution center in Shreveport, Louisiana, which ships 100% of its controlled drug products, and the second for its small transportation hub in Jefferson Parish, Louisiana. Morris & Dickson employs approximately 800 people, with over sixty percent of these employees working in Shreveport. Morris & Dickson's Shreveport distribution center provides much-needed

drugs to hundreds of hospitals, pharmacies, and alternate care providers—such as nursing homes, hospices, and public health facilities—across 14 different states.

19. Both of Morris & Dickson's registrations expire on January 31, 2019. DEA regulations require that Morris & Dickson file its renewal applications between 45 and 60 days prior to January 31, 2019. DEA regulations require that these licenses remain valid during the pendency of the underlying Order to Show Cause proceeding as long as the renewal applications are timely filed. To deny the renewal application, DEA would need to institute a new administrative proceeding before an ALJ.

20. During the relevant time period, Morris & Dickson had a productive working relationship with DEA and believed it was acting in compliance with its regulatory obligations. In addition, between 2014 and 2017, DEA conducted three routine audits of Morris & Dickson's Shreveport facitility, none of which resulted in adverse findings. It therefore was surprised when DEA sought to suspend its registrations and subject it to an unconstitutional adversarial proceeding before a DEA ALJ.

21. Indeed, Morris & Dickson held multiple voluntary meetings with DEA officials to address and develop regulatory compliance issues and systems. For example, in spring 2016, Morris & Dickson invited then-DEA Assistant Administrator for Diversion Control Louis Milione to Morris & Dickson's Shreveport headquarters to discuss Morris & Dickson's compliance efforts and technological capabilities. On August 17, 2016, Morris & Dickson's President & CEO, Paul Dickson, met with Mr. Milione, then-Deputy Assistant Administrator Demetra Ashley, and the Diversion Program Manager of the DEA New Orleans Field Division, Sonya Jackson, at the company's Shreveport headquarters. At that meeting, Mr. Dickson provided DEA with an explanation of Morris & Dickson's

programs for monitoring and detecting potentially suspicious customer orders of controlled substances. Mr. Dickson also sought feedback from DEA, however, DEA did not provide any comments to Mr. Dickson and made no criticisms or suggested changes regarding Morris & Dickson's compliance programs.

22. Without ever having previously notified Morris & Dickson that a single aspect of its diversion control operation was unacceptable, on or around May 2, 2018, DEA suddenly issued an Order To Show Cause and Immediate Suspension of Registration (the "Order to Show Cause," "Immediate Suspension Order" or "ISO"), suspending Morris & Dickson's DEA licenses without advance notice or warning. The ISO immediately cancelled both of Morris & Dickson's DEA licenses, RM0314790 and RM0335732, and required it to immediately halt shipment of all controlled substances from its Shreveport distribution center.

23. Prior to the May 2, 2018 ISO, Morris & Dickson never faced any DEA enforcement action, fine, or penalty in the entire history of its DEA registrations. DEA had in its possession information about every distribution of Schedule II controlled substances Morris & Dickson made to its pharmacy customers by virtue of mandatory ARCOS reports it filed each month. Nevertheless, DEA did not raise specific concerns to Morris & Dickson about any of its shipments to active customers. Nor did DEA ever request that Morris & Dickson voluntarily stop shipments to any particular customer.

24. Confronted with the threat of being forced out of business by DEA's unjustified ISO, Morris & Dickson filed suit and successfully obtained emergency injunctive relief against DEA. *Morris & Dickson Co., LLC v. Sessions, et al.*, Docket No. 5:18-cv-00605 (W.D. La. May 03, 2018). On May 8, 2018, Judge Elizabeth Foote of the

United States District Court for the Western District of Louisiana issued a Temporary Restraining Order enjoining DEA from enforcing the ISO.

25. In issuing the Temporary Restraining Order, Judge Foote heard testimony, and determined that Morris & Dickson demonstrated a "substantial likelihood" of successfully proving that the DEA Acting Administrator's decision to issue the ISO was arbitrary and capricious. The District Court also determined that Morris & Dickson faced a substantial threat of irreparable harm if enforcement of the ISO was not enjoined and that the balance of the equities and public interest further weighed in favor of enjoining the ISO's enforcement.

26. Faced with Judge Foote's findings and Morris & Dickson's pending motion for a preliminary injunction to terminate the ISO, DEA effectively conceded that its decision to issue the ISO was arbitrary and capricious. On May 18, 2018, then-DEA Acting Administrator Robert W. Patterson issued a Notice of Rescission of the ISO (the "Rescission Order"). The Acting Administrator resigned from DEA a short time thereafter.

27. Although unprecedented, DEA's Rescission Order did not remove the threat of enforcement hanging over Morris & Dickson's head. Rather, DEA continued to subject Morris & Dickson to an unlawful adjudicative process. The Rescission Order withdrew the immediate order of suspension, but DEA's Order to Show Cause remained in effect. As a result, Morris & Dickson had until June 1, 2018, to request an administrative hearing or else the DEA Acting Administrator would, on his own without hearing any evidence or argument from Morris & Dickson, issue a final order regarding Morris & Dickson's regulatory compliance efforts.

28. With the clock ticking and with no opportunity to demonstrate to DEA that its proceedings were unconstitutional, unjust, and in violation of the Controlled Substances Act, Morris & Dickson requested a hearing and objected to the DEA administrative process. The DEA Office of Administrative Law Judges ("OALJ") received the Request for Hearing on May 21, 2018, the same date on which DEA ALJ Charles Wm. Dorman issued an Order scheduling a Prehearing Conference for June 25, 2018, and required the parties to submit prehearing statements.

29. On May 30, 2018, Morris & Dickson's counsel informed DEA attorneys that DEA's ALJ appointment process suffered from the same constitutional infirmities as those identified in the then-pending Supreme Court case *Lucia v. Securities and Exchange Commission*, No. 17-0130 (Argued Apr. 23, 2018). Morris & Dickson suguested that the hearing before ALJ Dorman be postponed until after the impending *Lucia* decision. DEA consented to the adjournment, and ALJ Dorman issued a new prehearing and trial schedule.

30. Morris & Dickson timely and repeatedly made clear that it objected to the DEA administrative proceeding as a result of the unconstitutional appointment and removal process. For example, in a July 13, 2018 submission to the DEA ALJ, Morris & Dickson expressly reserved the right to object to the continuation of the proceedings against it in light of the Supreme Court decision in *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018). Morris & Dickson also stated in its timely submitted August 3, 2018 prehearing statement that it anticipated challenging the constitutionality of DEA's administrative process given the Supreme Court decision in *Lucia*. At the Prehearing Conference on August 10, 2018, Morris & Dickson again notified DEA and ALJ Dorman

that it might seek to challenge the constitutionality of the DEA administrative process on the basis of *Lucia*.

31.  In several conversations and emails between counsel, DEA led Morris & Dickson to believe that it was seriously considering a settlement proposal Morris & Dickson submitted in writing on August 23, 2018. However, on October 16, 2018, nearly sixty days after it first made a settlement proposal, DEA informed Morris & Dickson that it rejected the offered settlement and that no counter-offer from DEA would be forthcoming. That rejection left Morris & Dickson with no option but to file this lawsuit.

32.  Morris & Dickson's trial before ALJ Dorman is set to commence on or about November 13, 2018, and to continue until November 19, 2018.

## DEA ADMINISTRATIVE LAW JUDGES

33.  DEA ALJs are officers for the purpose of Article II of the U.S. Constitution. DEA ALJs receive their appointments pursuant to the Administrative Procedure Act ("APA"). Under that statute and its concomitant regulations, they preside over administrative proceedings, occupy a continuing office established by law, and exercise significant authority. For example, Sections 1316.52 and 1316.42(f) of Title 21 of the Code of Federal Regulations provide that ALJs shall oversee administrative proceedings. Section 930.204(a) of Title 5 of the Code of the Federal Regulations provides that DEA ALJs receive a career appointment and are exempt from probationary periods that apply to certain other government employees.

34.  Similar to SEC ALJs, which the Supreme Court has held are inferior officers within the meaning of Article II, DEA ALJs enjoy broad discretion to exercise significant

authority with respect to administrative proceedings. Under 5 U.S.C. § 556(c)(1)-(11), DEA ALJs may, among other things:

(a) administer oaths and affirmations;

(b) issue subpoenas authorized by law;

(c) rule on offers of proof and receive relevant evidence;

(d) take depositions or have depositions taken when the ends of justice would be served;

(e) regulate the course of the hearing;

(f) hold conferences for the settlement or simplification of the issues by consent of the parties or by the use of alternative means of dispute resolution;

(g) inform the parties as to the availability of one or more alternative means of dispute resolution, and encourage use of such methods;

(h) require the attendance at any conference held;

(i) dispose of procedural requests or similar matters;

(j) make or recommend decisions; and

(k) take other action authorized by agency rule consistent with [the APA].

35. DEA regulations also empower and require DEA ALJs to carry out adjudicative functions in hearings and resolve adversarial proceedings on behalf of DEA. In that regard, Section 1316.52 of Title 21 of the Code of Federal Regulations provides that DEA ALJs are "to conduct a fair hearing, to take all necessary action to

avoid delay, and to maintain order." Under the same regulations, DEA ALJs have the additional authority and power to:

(a) Arrange and change the date, time, and place of hearings . . . and prehearing conferences and issue notice thereof.

(b) Hold conferences to settle, simplify, or determine the issues in a hearing, or to consider other matters that may aid in the expeditious disposition of the hearing.

(c) Require parties to state their position in writing with respect to the various issues in the hearing and to exchange such statements with all other parties.

(d) Sign and issue subpoenas to compel the attendance of witnesses and the production of documents and materials to the extent necessary to conduct administrative hearings pending before him.

(e) Examine witnesses and direct witnesses to testify.

(f) Receive, rule on, exclude, or limit evidence.

(g) Rule on procedural items pending before him.

(h) Take any action permitted to the presiding officer as authorized by this part or by the provisions of the [APA].

**THE DEA ALJ APPOINTMENTS PROCESS VIOLATES THE APPOINTMENTS CLAUSE**

36. Section 3105 of Title 5 of the United States Code establishes the process for the appointment of all ALJs, including DEA ALJs. This statute provides that each federal

Executive agency "shall" appoint as many ALJs as necessary for the agency's administrative proceedings.

37. DEA currently has three ALJs. All three DEA ALJs, including ALJ Dorman assigned to oversee Morris & Dickson's administrative proceeding, were appointed pursuant to a similar, unconstitutional process.

38. DEA ALJs have at all times been appointed by the DEA Administrator. The DEA Administrator selects DEA ALJs from a pool of candidates that submit their applications to the White House Office of Personnel Management ("OPM").[1] The DEA Chief ALJ reviews those applications and recommends certain ALJ candidates for consideration and appointment by the DEA Administrator.

39. The appointment of DEA ALJs by the DEA Administrator violates Article II's Appointments Clause because the DEA Administrator (or Acting Administrator, as applicable) is not the "head" or "principal officer" of an executive Department. DEA is not an executive Department under Article II of the Constitution. Rather, DEA is an agency

---

[1] On July 10, 2018, President Donald J. Trump issued Presidential Executive Order ("E.O.") 13843, "Excepting Administrative Law Judges from the Competitive Service," which sought to provide flexibility in the ALJ appointment process by excepting ALJs from OPM competitive-examination and service-selection procedures. Significantly, however, E.O. 13843 did not remedy DEA's constitutionally defective ALJ appointment process. For example, prior to July 10, 2018, OPM required ALJ applicants to meet certain minimum qualifications, including qualifications relating to law licensure, litigation experience, and passage of the ALJ written examination developed and administered by OPM. E.O 13843 designated ALJs under a new excepted service, Schedule E, to permit ALJs to be appointed without imposing on them OPM's "complicated and elaborate examination processes or rating procedures . . . ." E.O. 13843 did not require ALJs to be appointed by the Heads of the respective Executive Departments, and did not address or affect the status of any ALJs appointed prior to July 10, 2018, including the DEA ALJs who were all appointed prior to July 10, 2018.

within and subordinate to the Department of Justice, an executive Department of the United States.

40. The Attorney General of the United States is the head and principal officer of the Department of Justice. As the head of the Department to which DEA belongs, the power and authority to appoint DEA ALJs rests solely, in addition to the President, with the Attorney General. The DEA Administrator lacks the constitutional power and authority to appoint an ALJ.

41. Neither the President of the United States nor the Attorney General of the United States appoints ALJs to their positions at DEA. Thus, the DEA ALJs were appointed pursuant to a process that violates the Appointments Clause, a fundamental defect in the DEA's administrative enforcement process.

### DEA'S SCHEME FOR THE REMOVAL OF ALJS VIOLATES ARTICLE II'S VESTING OF EXECUTIVE POWER IN THE PRESIDENT

42. The regulatory and administrative framework pursuant to which DEA ALJs may be removed also violates Article II because it robs the President and the Attorney General of their constitutional authority and duty to exercise executive power and to faithfully execute the laws of the United States through the oversight of inferior officers such as ALJs.

43. The APA provides that ALJs, including DEA ALJs, may be removed only for good cause as established and determined by the Merit Systems Protection Board. That statutory restriction renders the President and Attorney General unable to determine "good cause," and thus unable to remove DEA ALJs without approval of the MSPB. Members of the MSPB themselves, however, may not be removed absent good cause. These dual

for-cause removal limitations violate Article II. *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010).

44. This needlessly complex removal structure violates Article II's requirement that inferior executive officers not be protected from removal by their superiors at will, when those superiors are themselves protected from being removed by the President at will.

45. As alleged above, DEA ALJs are executive officers who exercise significant executive power. Nevertheless, (a) DEA ALJs are protected from removal by a statutory "good cause" standard, 5 U.S.C. §7521(a), and (b) MSPB members empowered to determine the "good cause" standard are themselves protected from removal by an "inefficiency, neglect of duty, or malfeasance in office" standard. 5 U.S.C. §1202(d). This arrangement thwarts the President's Article II executive power, and ensures that neither the President nor the Attorney General as Head of Department can take care that the laws are faithfully executed by determining whether good cause exists to remove inferior officers.

## CAUSES OF ACTION

### COUNT ONE
**(Application for Injunctive Relief)**

46. Morris & Dickson repeats and realleges each and every allegation in paragraphs 1-45 above as if fully set forth here.

47. Without injunctive relief from this court, Morris & Dickson will be required to submit to an unconstitutional proceeding. This in and of itself constitutes irreparable injury to Morris & Dickson unless DEA's current administrative proceeding is enjoined.

48. Furthermore, if the DEA Administrator, upon recommendation from the presiding DEA ALJ, finds that Morris & Dickson's continued registration is against the public interest, the harm will be be severe and irreversible. Morris & Dickson will be out of business because it is fully reliant on shipments of controlled substances from its Shreveport facility to maintain revenue for operations. Moreover, Plaintiff could not obtain meaningful judicial review in time to prevent this outcome. Nor can this harm be remedied after-the-fact with money damages, as numerous immunity doctrines would prevent Plaintiff from obtaining a financial damages award from DEA. And, in any event, Morris and Dickson will be out of business.

49. Morris & Dickson has a substantial likelihood of success on the merits of its claim. The harm to Plaintiff, absent injunctive relief, far outweighs any harm to DEA if such relief is granted. Finally, the grant of an injunction will serve the public interest by protecting parties' constitutional rights and ensuring that it can continue to serve its customers who require the medicines provided by Morris & Dickson.

## COUNT TWO
**(Declaratory Judgment)**

50. Morris & Dickson repeats and realleges each and every allegation in paragraphs 1-49 above as if fully set forth here.

51. Morris & Dickson requests a declaratory judgment that the statutes, regulatory provisions, and policies providing for the appointment of DEA ALJs are unconstitutional as applied by DEA and DOJ.

52. Morris & Dickson further requests a declaratory judgment that the statutes, regulatory provisions, and policies providing for removal of DEA ALJs are unconstitutional as applied by DEA and DOJ.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order and Judgment:

53. Declaring unconstitutional the statutes, regulatory provisions, and policies providing for the appointment and removal of DEA ALJs as applied by DEA and DOJ;

54. An order and judgment enjoining DEA and DOJ from carrying out an administrative proceeding against Morris & Dickson, including on the Order to Show Cause at issue or any other proceedings with regard to Morris & Dickson's DEA registrations unless and until a constitutionally valid system is in place;

55. Such other and further relief as this court may deem just and proper, including reasonable attorneys' fees and costs of this action.

Dated:     October 26, 2018

Respectfully submitted,

By: /s/    *Frank H. Spruiell*

| | |
|---|---|
| Frank H. Spruiell, Jr.,  La. Bar No. 1611 | Michael A. Carvin (*pro hac vice*), D.C. Bar No. 366-784 |
| Reid A. Jones, La. Bar No. 34611 | JONES DAY LLP |
| WIENER, WEISS & MADISON | 51 Louisiana Avenue, N.W. |
| A Professional Corporation | Washington, D.C.  20001 |
| 333 Texas Street, Suite 2350 (71101) | Telephone:  (202) 879-7643 |
| P. O. Box 21990 | Facsimile:   (202) 626-1700 |
| Shreveport, Louisiana  71120-1990 | |
| Telephone: (318) 226-9100 | |
| Facsimile: (318) 424-5128 | |
| Email:  fspruiell@wwmlaw.com | |
| Email:  rjones@wwmlaw.com | |

Jodi Avergun (*pro hac vice*), N.Y. Bar No. 2166668
Keith Gerver (*pro hac vice*), N.Y. Bar No. 5049846
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

Joshua Arnold (*pro hac vice*), N.Y. Bar No. 4718714
William Simpson (*pro hac vice*), N.Y. Bar No. 5587076
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Counsel for Morris & Dickson Co., LLC*