UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MORRIS & DICKSON CO., LLC,

                Plaintiff,

        v.

JEFFERSON B. SESSIONS, III, ET AL.,

                Defendant.

18-cv- _____

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Frank H. Spruiell, Jr., La. Bar No. 1611
Reid A. Jones, La. Bar No. 34611
WIENER, WEISS & MADISON
A Professional Corporation
333 Texas Street, Suite 2350 (71101)
P. O. Box 21990
Shreveport, Louisiana  71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
Email:  fspruiell@wwmlaw.com
Email:  rjones@wwmlaw.com

Joshua Arnold (*pro hac vice*), N.Y. Bar No. 4718714
William Simpson (*pro hac vice*), N.Y. Bar No. 5587076
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

Jodi Avergun (*pro hac vice*), N.Y. Bar No. 2166668
Keith Gerver (*pro hac vice*), N.Y. Bar No. 5049846
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

Michael A. Carvin (pro hac vice), D.C. Bar No. 366-784
JONES DAY LLP
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Telephone:  (202) 879-7643
Facsimile:   (202) 626-1700

*Counsel for Morris & Dickson Co., LLC*

## TABLE OF CONTENTS

**PAGE(S)**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ......................................................................................................... 3

ARGUMENT .............................................................................................................. 6

1.      MORRIS & DICKSON IS LIKELY TO SUCCEED ON THE MERITS ............. 6

     A.    DEA ALJs Are Not Constitutionally Appointed Because Neither
the President Nor the Attorney General Appointed Them ......................... 6

     B.    The DEA's Statutory Scheme Unconstitutionally Robs the
President and Attorney General of Their Power to Determine
Whether Good Cause Exists to Remove Inferior Officers ....................... 10

2.      MORRIS & DICKSON WILL SUFFER IRREPARABLE INJURY
ABSENT THE REQUESTED RELIEF ................................................................. 13

3.      THE BALANCE OF EQUITIES FAVORS MORRIS & DICKSON ................. 15

4.      THE PUBLIC INTEREST FACTOR HEAVILY FAVORS GRANTING
THE PRELIMINARY INJUNCTION ................................................................. 16

CONCLUSION ......................................................................................................... 18

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Armendariz-Mata v. U.S. DOJ, DEA,*
82 F.3d 679 (5th Cir. 1996) ................................................................ 15

*Boumediene v. Bush,*
553 U.S. 723 (2008) ........................................................................... 17

*Clinton v. City of New York,*
524 U.S. 417 (1998) ........................................................................... 17

*Feinerman v. Bernardi,*
558 F. Supp. 2d 36, 51 (D.D.C. 2008) ............................................... 14

*Free Enter. Fund v. Public Co. Accounting Oversight Board,*
561 U.S. 477 (2010) ...................................................... 6, 8, 11, 12, 17

*Freytag v. C.I.R.,*
501 U.S. 868 (1991) ..................................................................... 8, 16

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,*
23 F.3d 1071 (6th Cir. 1994) .............................................................. 17

*Gordon v. Holder,*
721 F.3d 638 (D.C. Cir. 2013) ............................................................ 16

*Lucia v. S.E.C.,*
138 S. Ct. 2044 (2018) ................................... 1, 2, 6, 7, 12, 13, 16

*Moore v. City of East Cleveland,*
431 U.S. 494 (1977) ........................................................................... 14

*Morrison v. Olson,*
487 U.S. 654 (1988) .............................................................. 10, 11, 17-18

*Nat'l Mining Ass'n v. Jackson,*
768 F. Supp. 2d 34 (D.D.C. 2011) ...................................................... 14

*Opulent Life Church v. City of Holly Springs, Miss.,*
697 F.3d 279 (5th Cir. 2012) .............................................................. 17

*Pub. Utils. Comm'n of Cal. v. United States,*

355 U.S. 534 (1958) ............................................................................................. 14

*Ryder v. United States*,
515 U.S. 177 (1995) ............................................................................................. 16

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018) ........................................................................................ 17

*Sherley v. Sebelius*,
704 F. Supp. 2d 63 (D.D.C. 2010) ...................................................................... 14

*Tex. Med. Providers Performing Abortion Services v. Lakey*,
667 F.3d 570 (5th Cir. 2012) ................................................................................ 6

*United Church of the Med. Ctr. v. Med. Ctr. Comm'n*,
689 F.2d 693 (7th Cir. 1982) .............................................................................. 14

*United States v. L.A. Tucker Truck Lines, Inc.*,
344 U.S. 33 (1952) .............................................................................................. 16

*Valley v. Rapides Parish Sch. Bd.*,
118 F.3d 1047 (5th Cir. 1997) ............................................................................ 14

**STATUTES**

5 U.S.C. § 556(c) ................................................................................................... 7

5 U.S.C. § 1202(d) ........................................................................................... 2, 12

5 U.S.C. § 7521(a) ........................................................................................... 2, 11

21 U.S.C. § 871(a) ................................................................................................. 9

21 U.S.C. § 878(a) ................................................................................................. 9

**REGULATIONS**

5 C.F.R. § 930.204(a) ............................................................................................ 7

21 C.F.R. §1316.52 ................................................................................................ 7

28 C.F.R. § 0.100 .................................................................................................. 9

**EXECUTIVE AUTHORITIES**

Exec. Order No. 13843, 583 Fed. Reg. 32755 (July 10, 2018) ..................................................... 10

*Guidance on Administrative Law Judges after Lucia v. SEC (S. Ct.)*,
Off. of the Solicitor General, July 23, 2018, *available at*
https://static.reuters.com/resources/media/editorial/20180723/ALJ--SGMEMO.pdf................ 10

*In re Pending Administrative Proceedings*,
Comm. Fut. Trading Comm'n, (Apr. 9, 2018), *available at*
https://www.cftc.gov/sites/default/files/2018-04/ogcorder040918.pdf........................................ 8

*In re Pending Administrative Proceedings*,
Securities Act Release No. 10536 (Aug. 22, 2018), *available at*
https://www.sec.gov/litigation/opinions/2018/33-10536.pdf............................................... 2, 8, 16

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. II, § 1, cl. 1 ........................................................................................................ 10

U.S. Const. Art. II, § 2, cl. 2 ...................................................................................................... 1, 7

**MAY IT PLEASE THE COURT:**

Plaintiff Morris & Dickson Co., LLC ("Morris & Dickson"), submits this Memorandum in Support of its Motion for Preliminary Injunction (the "Motion") enjoining Defendants Jefferson B. Sessions, III, in his official capacity as Attorney General of the United States, the United States Department of Justice (the "DOJ"), Uttam Dhillon, in his official capacity as Acting Administrator of the Drug Enforcement Administration, the United States Drug Enforcement Administration (the "DEA"), and the United States of America (collectively, the "Defendants"), from subjecting Morris & Dickson to an administrative proceeding and trial before a DEA ALJ, including prohibiting the Defendants from requiring Morris & Dickson to appear at the upcoming November 13, 2018 hearing, and granting any other relief the court deems just and proper.

## PRELIMINARY STATEMENT

This action arises out of an ongoing administrative proceeding before a DEA Administrative Law Judge ("ALJ").  Defendants subjected Morris & Dickson to an unconstitutional adjudicative process by issuing Morris & Dickson an Order to Show Cause and Immediate Suspension of Registration to initiate a DEA administrative proceeding.  This administrative proceeding is ongoing.

Because of the manner in which DEA ALJs are appointed, and the protection they receive from removal, the DEA administrative proceeding that the Defendants imposed on Morris & Dickson is unconstitutional.

ALJs are "Officers of the United States" within the meaning of the Appointments Clause of the U.S. Constitution, *see* Art. II, § 2, cl. 2, because they "hold a continuing office established by law" and exercise "'significant discretion' when carrying out . . . 'important functions'." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2053 (2018).  Such "Officers of the United States" must be "properly

appointed," meaning appointed by the Head of Department—not by a staff member or other inferior officer. *See id.* at 2055.

Like the Securities and Exchange Commission ("SEC" or "Commission") ALJs at issue in *Lucia* who were not appointed by the Commission as a head of department, neither are DEA ALJs appointed by the head of the department to which the DEA belongs, *i.e.*, the Attorney General. Instead, DEA ALJs are appointed by the DEA Administrator upon recommendation from the DEA's Chief ALJ. [1]   Consequently, the ALJ selection process at the DEA violates the Appointments Clause, depriving Morris & Dickson of a constitutional proceeding before a constitutionally valid hearing officer.

DEA ALJs also receive unconstitutional statutory protection against removal that deprives the President and Attorney General of their constitutional executive oversight duties. *See* 5 U.S.C. § 7521(a).  While "good cause" limitations can be valid, the determination of the criterion of "good cause" sufficient for removal must lie solely with the President or heads of departments.  *See generally Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring).  DEA ALJs enjoy "good cause" protection against removal, but only the Merit Systems Protection Board ("MSPB") determines what behaviors or actions may result in a valid "good cause" removal.  *See* 5 U.S.C. § 7521(a). And members of the MSPB themselves may only be removed by the President "for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

Thus, the MSPB is independent of the President and it, rather than the President and the removable-at-will Attorney General, determines what behaviors or actions provide "good cause"

---

[1]   After the Supreme Court's ruling in *Lucia*, the SEC reformed its ALJ appointments process to ensure that the Commission itself exercises appointment power, beginning with the Commission's ratification of all SEC ALJs.  *See In re Pending Administrative Proceedings*, Securities Act Release No. 10536 (Aug. 22, 2018), *available at* https://www.sec.gov/litigation/opinions/2018/33-10536.pdf.  As of this date, the DEA has not taken the same remedial action to ensure its ALJs meet the constitutional requirements articulated in *Lucia*.

to remove a DEA ALJ.  Consequently, that ALJ is above the oversight of the President.   Thus, this administrative configuration, with two layers between the President or Attorney General's judgment and their inferior officer, is an unconstitutional structure that undermines the President's Article II executive power.

For these reasons as well as those set forth below, a preliminary injunction is necessary to prevent Morris & Dickson from being compelled to submit to an unconstitutional proceeding and from suffering irreparable harm from unconstitutional governmental action.  Therefore, Morris & Dickson respectfully requests that this Court grant its Motion for a preliminary injunction, and in the interim grant its request that the Defendants be enjoined from requiring Morris & Dickson to appear at the upcoming November 13, 2018 hearing.

## BACKGROUND

Morris & Dickson is a DEA-registered wholesale drug distribution company headquartered in Shreveport, Louisiana.  Compl. ¶ 18.  Founded in 1841, it remains a family owned and operated business, and is now the sole remaining independently owned and privately held full-line drug wholesale distributor in the nation.  *Id*.  Morris & Dickson employs approximately 800 people, with over sixty percent of these employees working in Shreveport.  *Id*.  Morris & Dickson's Shreveport distribution center provides much-needed drugs to hundreds of hospitals, pharmacies, and alternate care providers—such as nursing homes, hospices, and public health facilities—across 14 different states.  *Id*.

During the relevant time period, Morris & Dickson believed it was acting in compliance with its regulatory obligations and had no reason to believe DEA would attempt to suspend its DEA registrations.  Compl. ¶ 20.  Between 2014 and 2017, DEA conducted three routine audits of Morris & Dickson's Shreveport facitility, none of which resulted in adverse findings.  *Id*.  However, without ever having previously notified Morris & Dickson that a single aspect of its

diversion control operation was unacceptable, on or around May 2, 2018, the DEA suddenly issued an Order To Show Cause and Immediate Suspension of Registration (the "Immediate Suspension Order" or "ISO"), suspending Morris & Dickson's DEA registrations without advance notice or warning, and halting shipment of all controlled substances from its Shreveport distribution center. Compl. ¶ 22.  Prior to the May 2, 2018 ISO, Morris & Dickson never faced any DEA enforcement action, fine, or penalty in its 177-year history.  Compl. ¶ 23.

On May 8, 2018, Judge Elizabeth Foote of the U.S. District Court for the Western District of Louisiana issued a Temporary Restraining Order enjoining DEA from enforcing the ISO. Compl. ¶ 24.  In issuing the Temporary Restraining Order, Judge Foote heard testimony and determined that Morris & Dickson demonstrated a "substantial likelihood" of successfully proving that the DEA Acting Administrator's decision to issue the ISO was arbitrary and capricious. Compl. ¶ 25.  The District Court also determined that Morris & Dickson faced a substantial threat of irreparable harm if enforcement of the ISO was not enjoined and that the balance of equities and public interest further weighed in favor of enjoining the ISO's enforcement.  *Id*.

Faced with Judge Foote's findings and Morris & Dickson's motion for a preliminary injunction to terminate the ISO, DEA effectively conceded that its decision to issue the ISO was arbitrary and capricious.  Compl. ¶ 26.  On May 18, 2018, then-DEA Acting Administrator Robert W. Patterson issued a Notice of Rescission of the ISO (the "Rescission Order").  *Id*.  The Acting Administrator then resigned from DEA a short time thereafter.  *Id*.

Although unprecedented, DEA's Rescission Order did not remove the threat of enforcement hanging over Morris & Dickson's head, because DEA's Order to Show Cause remained in effect.  Compl. ¶ 27.  In other words, Morris & Dickson had until June 1, 2018, to request an administrative hearing or else the DEA Acting Administrator would, on his own without hearing any evidence or argument from Morris & Dickson, issue a final order regarding Morris &

Dickson's regulatory compliance efforts.  *Id*.  With the clock ticking and no ability to demonstrate to DEA that its proceedings were unjust, Morris & Dickson requested a hearing and objected to the DEA administrative process.  Compl. ¶ 28.

On or around May 21, 2018, Morris & Dicson filed a Request for Hearing with the DEA Office of Administrative Law Judges ("OALJ").  ALJ Dorman issued an Order scheduling a Prehearing Conference for June 25, 2018, and required the parties to submit prehearing statements. Compl. ¶ 28.  On May 30, 2018, Morris & Dickson's counsel communicated to attorneys for the DEA Office of Chief Counsel that DEA's administrative process suffered from the same constitutional infirmities as the SEC's process then under Supreme Court review.  Compl. ¶ 29. Morris & Dickson's counsel proposed extending the administrative hearing schedule past the end of June 2018, when it anticipated that *Lucia* would be decided.  DEA counsel agreed to a 45-day extension to the hearing schedule.  *Id*.

Morris & Dickson timely and repeatedly made clear that it objected to the DEA appointment and removal process.  Compl. ¶ 30.  In papers Morris & Dickson submitted to the administrative court on July 13, 2018, it specifically said that it did not "waive its right to object to the continuation of [the administrative] proceeding in light of" the *Lucia* decision.  Compl. ¶ 30. Morris & Dickson stated in its timely submitted August 3, 2018 prehearing statement that it anticipated challenging the constitutionality of DEA's administrative process given the Supreme Court decision in *Lucia*.  *Id*.  Morris & Dickson repeated as much before ALJ Dorman at the Prehearing Conference on August 10, 2018, again providing DEA with notice that Morris & Dickson may seek to challenge the constitutionality of the DEA administrative process on the basis of *Lucia*.  *Id*.  Morris & Dickson's trial before ALJ Dorman is set to commence on or about November 13, 2018, and to continue until November 19, 2018.  Compl. ¶ 32.

## ARGUMENT

Morris & Dickson is entitled to a preliminary injunction if it "show[s] (1) a substantial likelihood that [it] will prevail on the merits, (2) a substantial threat that [it] will suffer irreparable injury if the injunction is not granted, (3) [its] substantial injury outweighs the threatened harm to the party whom [it] seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012). Because the appointment and removal procedures for DEA ALJs are plainly unconstitutional following the Supreme Court's *Lucia* decision, and because Morris & Dickson will be irreparably harmed if it is subjected to a burdensome, unlawful administrative process, it easily meets this standard.

## 1.     MORRIS & DICKSON IS LIKELY TO SUCCEED ON THE MERITS

Following *Lucia*, ALJs are no doubt inferior officers. *See Lucia*, 138 S. Ct. at 2053. The Appointments Clause in Article II of the Constitution requires the President or a Head of Department to appoint officers, and forbids multiple layers of insulation protecting officers from the President's authority and judgment to remove them. *See Free Enter. Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 492 (2010). But Morris & Dickson is subject to an administrative proceeding before a DEA ALJ who was not constitutionally appointed under the Appointments Clause, and who is not accountable to the President or Attorney General because they do not determine whether good cause exists for the removal of DEA ALJs. Morris & Dickson, therefore, is currently subject to an unconstitutional administrative proceeding that this Court should enjoin.

### A.     DEA ALJs Are Not Constitutionally Appointed Because Neither the President Nor the Attorney General Appointed Them

The process by which DEA ALJs are appointed violates the Appointments Clause because the ALJs are selected by the DEA Administrator from a pool of applicants rather than by

appointment of the President or the Head of Department—that is, the President or the United States Attorney General.  The Constitution is unmistakably clear that any officer not appointed by the President must be appointed by a "Head of Department."  U.S. Const. Art II, § 2, cl. 2.; *see also Lucia*, 138 S. Ct. at 2049.

The DEA ALJ overseeing Morris & Dickson's administrative proceeding is an inferior officer.  DEA ALJs occupy an essentially identical position as the SEC ALJs found to be "officers" in *Lucia*.  The *Lucia* Court explained that SEC ALJs hold "a continuing office established by law," *Lucia*, 138 S. Ct. at 2053, because they "receive[] a career appointment," 5 C.F.R. § 930.204(a), "to a position created by statute, down to its 'duties, salary, and means of appointment,'" namely, the Administrative Procedure Act, 5 U.S.C. §§ 556-557, 5372, 3105.  *Lucia*, 138 S. Ct. at 2053 (citing *Freytag*, 501 U.S. at 878).  *Lucia* also acknowledged that SEC ALJs exercised "significant discretion" when carrying out "important functions," and emphasized the ability of SEC ALJs to take testimony, receive evidence or examine witnesses, conduct trials, regulate the course of a hearing, and enforce compliance with discovery orders.  *Id*.

DEA ALJs are creatures of the same statutory scheme as SEC ALJs, so *Lucia* applies with equal force here.  DEA ALJs are inferior officers holding a continuing office established by law because they receive career appointments, 5 C.F.R. § 930.204(a), they hold a position granted by statute, 5 U.S.C. § 556(c)(1)-(11), and they exercise significant discretion when carrying out important functions to "conduct a fair hearing" and "maintain order." 21 C.F.R. §1316.52(a)-(h).

The SEC responded to *Lucia* by issuing constitutional appointments of ALJs, originating from the Commission itself, ratifying the status of ALJs as inferior officers appointed by a Head

of Department.[2]  Other agencies have similarly responded to *Lucia* by ratifying appointments.[3]
But at the DEA, ALJs are still appointed by the DEA Administrator upon recommendation from
the DEA's Chief ALJ.  Compl. ¶ 38.

Put simply, the DEA Administrator is not a Head of Department.  Leading an organ within
the executive branch, such as the DEA, is a necessary but *not* sufficient condition to being a Head
of Department.  *Freytag v. C.I.R.*, 501 U.S. 868, 885 (1991) ("We cannot accept . . . that every
part of the Executive Branch is a department, the head of which is eligible to receive the
appointment power.").

The Supreme Court's opinion in *Free Enterprise Fund v. PCAOB*, focusing on the text and
history of the Appointments Clause, made clear that a Department is inherently a *freestanding*
component of the Executive Branch.  "Because the Commission is a freestanding component of
the Executive Branch, *not subordinate to or contained within any other such component*, it
constitutes a 'Department' for the purposes of the Appointments Clause."  561 U.S. 477, 511
(2010) (emphasis added).  *See also id.*  (describing the founding-era meaning of "department" with
reference to Noah Webster's 1828 dictionary definition as a "separate allotment or part of business;
a distinct province").  Accordingly, the "head" of the DEA—the Administrator—is not Head of a
"Department."

The DEA is both subordinate to and contained within another component of the executive
branch: the Department of Justice.  When the Reorganization Plan of 1973 created the DEA, it left
no room for ambiguity about whether the DEA would be contained within another department.

---

[2]  *See In re Pending Administrative Proceedings*, Securities Act Release No. 10536 (Aug. 22,
2018), *available at* https://www.sec.gov/litigation/opinions/2018/33-10536.pdf.

[3]  *See*, *e.g.*, *In re Pending Administrative Proceedings*, Comm. Fut. Trading Comm'n, (Apr. 9,
2018) (responding to *Lucia* by ratifying appointment of the CFTC Judgment Officer by the
Commission itself), *available at* https://www.cftc.gov/sites/default/files/2018-
04/ogcorder040918.pdf.

*See* Reorganization Plan No. 2 of 1973, § 4.  On the contrary, the Plan explicitly declared, "[t]here is established in the Department of Justice an agency which shall be known as the Drug Enforcement Administration. . . ."  *Id*.  The Plan thus transferred "all intelligence, investigative, and law enforcement functions" related to drug enforcement from other cabinet positions "to the Attorney General."  *Id*. § 1.  Likewise under the Controlled Substances Act ("CSA"), Congress couched the DEA's authority to enforce the CSA within the power to "perform such other law enforcement duties as the Attorney General may designate."  21 U.S.C. § 878(a)(5); *see also* 28 C.F.R. § 0.100 (assigning to the DEA various functions vested in the Attorney General).  Likewise, the Plan dictates that the Administrator "shall perform such functions as the Attorney General shall from time to time direct."  Reorganization Plan No. 2 of 1973 § 5.

The Supreme Court has recognized the hierarchy between the DOJ, headed by the Attorney General, and its subordinate component the DEA, by finding that DEA officials are simply officers of the Department of Justice.  *Touby v. United States*, 500 U.S. 160, 169 (1991).  In *Touby*, the Court evaluated Section 501(a) of the CSA, which provides that "[t]he Attorney General may delegate any of his functions under [the Controlled Substances Act] to any officer or employee of the Department of Justice."  21 U.S.C. § 871(a).  Applying Section 501, the Court rejected the petitioner's argument "that Congress did not authorize the delegation of temporary scheduling power from the Attorney General to the DEA. . . ."  *Touby*, 500 U.S. at 169.  That outcome is only possible if DEA officers necessarily fit the "officer or employee of the Department of Justice" requirements of Section 501.  *See* 21 U.S.C. § 871(a).

Further, the Solicitor General explained in a now-public Department of Justice memorandum addressed to all Agency General Counsel that "[f]or traditional agencies in the Executive Branch, the relevant [Head of Department] is the head of the Executive Department to

which your agency or office belongs."[4]  Following this reasoning, the Attorney General is the Head

of Department of the DEA, and either the Attorney General or the President must appoint DEA

ALJs.[5]  Because DEA ALJs are not appointed by the Attorney General, the current administrative

proceeding against Morris & Dickson is an unconstitutional proceeding.

**B.**  **The DEA's Statutory Scheme Unconstitutionally Robs the President and Attorney General of Their Power to Determine Whether Good Cause Exists to Remove Inferior Officers**

Article II of the U.S. Constitution vests "the executive Power" in the President, including

ultimate authority to remove officers to fulfill that executive power and preserve the separation of

powers.  U.S. Const. Art. II, § 1, cl. 1.  Nonetheless, the Supreme Court has acknowledged that

Congress may impose certain limitations on that power. Specifically, the Court has permitted

certain "for good cause" limitations on the President's removal authority.  *Morrison v. Olson*, 487

U.S. 654, 663 (1988).

In *Morrison v. Olson*, the Supreme Court upheld the constitutionality of independent

counsel who were appointed by a special court, wielded the full powers of a prosecutor, and were

removable by the Attorney General only "'for good cause.'"  *Id*. at 663 (quoting 28 U.S.C.

§596(a)(1)).  "In *Humphrey's Executor*, [the Court] found it 'plain' that the Constitution did not

give the President 'illimitable power of removal' over the officers of independent agencies."  *Id*.

at 687 (quoting *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935)).  In both *Morrison*

---

[4] *Guidance on Administrative Law Judges after Lucia v. SEC (S. Ct.)*, Off. of the Solicitor General, July 23, 2018, *available at* https://static.reuters.com/resources/media/editorial/20180723/ALJ--SGMEMO.pdf

[5] The President's recent executive order hardly solves the Appointment Clause violation.  *See* Exec. Order No. 13843, 583 Fed. Reg. 32755 (July 10, 2018).  The order exempted ALJs from certain competitive service selection procedures in an attempt to make them "compatible with the discretion an agency head must possess under the Appointments Clause."  This Executive Order did not purport to, and did not, cure the constitutional issues surrounding ALJ appointments—as shown by other agencies' moves to ratify ALJs.

-10-

and *Humphrey's Executor*, however, the <u>*determination of*</u> "good cause" rested in constitutionally authorized hands: either the President or a Head of Department beholden to the President.

Specifically, the Court in *Morrison* noted that the statute "g[a]ve the Attorney General," an officer directly responsible to the President and "through [whom]" the President could act, "several means of supervising or controlling" the independent counsel—"[m]ost importantly . . . the power to remove the counsel for good cause." *Id*., at 695–696 (internal quotation marks omitted). The determination of the conduct or factors that would result in a removal for "good cause" was not outsourced to yet another agency or individual and remained with the Attorney General.  *See Morrison*, 487 U.S. at 685-86.  Thus, since the power to remove was vested in the Attorney General—who is the President's "alter ego" because the President may remove him at will—this did not infringe the President's executive power.  The President effectively exercises the removal power through his "alter ego."  *See Free Enter. Fund*, 561 U.S. at 495–97; *Myers v. United States*, 272 U.S. 52, 133 (1926) ("Each head of a department is and must be the President's alter ego in the matters of that department where the President is required by law to exercise authority.").

Here, however, the APA allows an action to remove certain ALJs, including DEA ALJs, only "for good cause *established and determined by the Merit Systems Protection Board* on the record after opportunity for hearing before the Board."  5 U.S.C. § 7521(a) (emphasis added).[6] Those MSPB members in turn may not be removed except for "inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).  Unlike the Attorney General, MSPB members are

---

[6]   For example, the President's oversight of his inferior officers at the DEA is so limited that, even with the Attorney General's support, he would be powerless to remove a hypothetical DEA ALJ that, because of the ALJ's own personal views in favor of decriminalization of marijuana, refused to conduct proceedings against registrants charged with violations of federal marijuana laws unless the MSPB determined that this behavior constituted a "good cause" to remove the ALJ.

independent actors and not removable at-will "alter egos" of the President.  Thus, vesting them with the authority to determine "good cause" for removal unconstitutionally infringes the President's removal power.  *Free Enterprise Fund* makes clear that these "dual for-cause limitations . . . contravene the Constitution's separation of powers." *Free Enter. Fund*, 561 U.S. at 492.  By "withdraw[ing] from the President any decision on whether that good cause exists," *id*. at 495, and vesting that power in the MSPB, the DEA ALJs' statutory arrangement usurps the President's Article II authority to oversee the DOJ.  The result is a system of DEA ALJs who are accountable neither to the President nor to his alter ego, a Head of Department—a far cry from the President constitutionally charged with "the power of appointing, overseeing, and controlling those who execute the laws." *Id*. at 492 (quoting James Madison, 1 Annals of Cong. 463 (1789)).

Specifically, by empowering decisionmakers who can only be removed for "inefficiency, neglect of duty, or malfeasance in office" to determine when inferior officers may themselves be removed "for cause," the statutory scheme denies the President the power to remove officers executing federal law. While "good cause" restrictions on the President's removal power are acceptable (in some circumstances), the President cannot remove DEA ALJs for what *he* considers "good cause," since that "determination" is made by officers over whom he does not exercise plenary power.

In his *Lucia* concurrence, Justice Breyer directly acknowledged that the MSPB offers troubling protection against ALJ removal: "Congress seems to have provided administrative law judges with two levels of protection from removal without cause—just what *Free Enterprise Fund* interpreted the Constitution to forbid in the case of the Board members." 138 S. Ct. at 2060 (Breyer, J., concurring). Justice Breyer noted that the Court in *Free Enterprise Fund* chose not to declare that ALJs violated the Constitution's Article II removal requirements, *id*. at 2061, but the Court reached that decision in a pre-*Lucia* environment. *Lucia* definitively ruled that ALJs are

inferior officers, thus altering the landscape of administrative law and ALJs. *See Lucia*, 138 S. Ct. at 2053-55. Considering the extraordinary power of DEA ALJs, their unchecked lifetime tenure, and the unusual insulation provided by the MSPB, DEA ALJs can no longer escape the constitutional requirement to fall within executive oversight. The President or Attorney General must have the power to determine when good cause exists to remove ALJs, and act on that determination in accordance with the President and his Article II executive power.

In sum, the DEA ALJ's "good cause" removal protections fall to the discretion of the MSPB—itself insulated from presidential oversight by another layer of removal protection. This arrangement thwarts the President's Article II executive power, and ensures that neither the President nor the Attorney General as Head of Department can see that the laws are faithfully executed by determining whether good cause exists to remove inferior officers. In light of *Lucia*, the DEA can claim no protection from *Morrison or Humphrey's Executor* to preserve this unconstitutional structure.

### 2.   MORRIS & DICKSON WILL SUFFER IRREPARABLE INJURY ABSENT THE REQUESTED RELIEF

Without injunctive relief from this court, Morris & Dickson will be required to submit to a proceeding that nakedly violates the separation of powers.  Being forced to endure this *void-ab-initio* process before a constitutionally unacceptable adjudicator plainly constitutes irreparable harm.  A litigant facing the threat of administrative proceedings before a structurally biased adjudicator, for example, need not suffer through those proceedings before seeking review. Instead, because "irreparable injury [occurs] when [a] plaintiff [i]s forced to submit" to such an adjudication, it may be enjoined at the outset. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997); *see also*, *e.g.*, *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693 (7th Cir. 1982) (irreparable injury in proceeding before adjudicator with a financial stake

in the dispute). Mandatory proceedings before an unconstitutionally appointed and unconstitutionally insulated decisionmaker are an even more systemic flaw and give rise to at least the same irreparable injury. "[W]here the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, . . . judicial relief [may be] sought as the only effective way of protecting the asserted constitutional right." *Pub. Utils. Comm'n of Cal. v. United States*, 355 U.S. 534, 539–40 (1958); *cf., e.g., Moore v. City of East Cleveland*, 431 U.S. 494, 528 n.3 (1977) (litigants may challenge an unconstitutional permitting scheme without seeking a permit because of the "irreparable injury" caused by being forced to submit to such a scheme).

Morris & Dickson's irreparable injury is further illustrated by the other uncompensable harms it will suffer if forced to proceed before the DEA ALJ. A government action that threatens great, certain, and imminent injury is deemed irreparable where, because of sovereign immunity, the victim will not be able to recover compensatory damages. *See Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (if plaintiff "cannot recover damages from the defendant due to the defendant's sovereign immunity . . . any loss of income suffered by the plaintiff is irreparable *per se*"); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52-53 (D.D.C. 2011); *Sherley v. Sebelius*, 704 F. Supp. 2d 63, 72 (D.D.C. 2010). If the DEA ALJ suspends Morris & Dickson's DEA registrations, the ensuing reputational and economic damage would be severe and irreversible, long before Morris & Dickson could obtain meaningful judicial review. And even after Morris & Dickson prevailed in overturning the DEA's unlawful decision (rendered by an unlawful decisionmaker), sovereign and qualified immunity doctrines would prevent Morris & Dickson from recovering money damages to restore the reputational harm, lost sales, and interrupted operations inflicted by any adverse administrative judgment. *See Armendariz-Mata v. U.S. DOJ, DEA*, 82 F.3d 679, 682 (5th Cir. 1996) (dismissing compensatory and punitive damages claims against DEA, explaining the "APA's § 702 waiver of the government's sovereign immunity

does not apply to monetary damages.").  Because Morris & Dickson faces deprivation of constitutional rights and irreparable injury to its business, it will suffer irreparable harm and is therefore entitled to injunctive relief.

**3.      THE BALANCE OF EQUITIES FAVORS MORRIS & DICKSON**

Morris & Dickson is thus poised to suffer irreparable harm at the hands of an unconstitutional administrative proceeding.  The DEA, by contrast, faces no harm at all from an injunction requiring it to litigate the constitutional acceptability of its ALJs in this Court before any proceeding in its administrative tribunal.  To begin with, the DEA has effectively conceded that there is no imminent need to modify Morris & Dickson's registrations—rather than contest the court's decision to preliminarily enjoin the Immediate Suspension Order, the DEA rescinded it.  Moreover, the DEA has no legitimate interest in litigating the constitutionality of its ALJ structure in-house.  DEA ALJs are not authorized or competent to determine whether the ALJ appointment and removal process violates the Constitution.  Finally, the DEA has no legitimate interest in delaying for years, on a petition for appellate review, the adjudication of the constitutionality of the DEA ALJs' service rather than adjudicating the issue in district court today.

Indeed, the DEA should *want* the issue of whether its ALJs are unconstitutionally insulated from presidential control decided now, not through a petition for review.  If Morris & Dickson prevails on a petition for review—as it surely will, given the clarity with which *Lucia* and the Solicitor General's own memorandum speak to this issue—any order against Morris & Dickson will be void.  *See Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991) ("alleged defect in the appointment . . . goes to the validity of the . . . proceeding"); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that a defect in the appointment of an officer would be "an irregularity which would invalidate a resulting order").  As a result, Morris & Dickson will be entitled (at the least) to a new hearing, before a constitutionally valid ALJ.  *See Lucia*, 138 S.

Ct. at 2055 ("[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." (internal quotation marks omitted)); *see Ryder v. United States*, 515 U.S. 177, 188 (1995) (holding that a successful Appointments Clause challenger "is entitled to a hearing before a properly appointed panel" of the body in question). The DEA has no valid interest in wasting its time—and Morris & Dickson's money and reputation—in administrative proceedings that will just have to be redone if and when the DEA receives constitutionally acceptable ALJs.

The balance of equities thus strongly supports enjoining the DEA's administrative process against Morris & Dickson until the DEA's ALJ appointment and removal procedures are brought into harmony with the Constitution.  In the interim, since the hearing before the DEA ALJ is currently scheduled to begin on November 13, 2018, and since Morris & Dickson's Motion raises (at the very least) serious question as to whether that allegedly unconstitutional proceeding should be enjoined to avoid irreparable injury, this Court should enjoin Defendants from requiring Morris & Dickson to appear before a DEA ALJ, either at the currently-scheduled November 13, 2018 hearing or any other date, until the Court rules on Morris & Dickson's Motion for preliminary injunction.  Such interim relief would give this Court and the parties sufficient time to resolve Plaintiff's Motion in an orderly and efficient manner.

4. **THE  PUBLIC  INTEREST  FACTOR  HEAVILY  FAVORS  GRANTING  THE PRELIMINARY INJUNCTION**

The public interest in this case favors the enforcement of individual constitutional rights against an overreach of the administrative state.  *See generally Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[I]t may be assumed that the Constitution is the ultimate expression of the public interest.") (citation omitted).  In fact, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control*

*Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *accord Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (applying that rule to enforce a preliminary injunction protecting First Amendment rights in the Fifth Circuit).  A preliminary injunction against the DEA is the only way to preserve Morris & Dickson's constitutional rights against being subjected to an unconstitutional proceeding.

An injunctive order would also restore constitutional separation of powers by ensuring members of the executive branch are accountable to the President and the people—not left to their own unchecked discretion.  *See Free Enter. Fund*, 561 U.S. at 492.  In a democracy, the preservation of due process and constitutional rights serves the most important public interest. *See G & V Lounge, Inc.*, 23 F.3d at 1079.  The separation of powers is an indispensable bulwark protecting those rights, and therefore serving that interest.  *See Boumediene v. Bush*, 553 U.S. 723, 742 (2008) ("This [separation of powers] serves not only to make Government accountable but also to secure individual liberty."); *Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring) ("Liberty is always at stake when one or more of the branches seek to transgress the separation of powers."); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1224 (2018) (Gorsuch, J., concurring) (acknowledging the "faithful expression of ancient due process and separation of powers principles the framers recognized as vital to ordered liberty under the Constitution."); *Morrison v. Olson*, 487 U.S. 654, 710 (1988) (Scalia, J., dissenting) ("While the separation of powers may prevent us from righting every wrong, it does so in order to ensure that we do not lose liberty.").  Since injunctive relief is necessary here to preserve constitutional rights, it unquestionably serves the public interest.

## **CONCLUSION**

For the foregoing reasons, Morris & Dickson respectfully requests that this Court grant its application for a preliminary injunction, including its request for interim relief from the upcoming November 13, 2018 hearing.

Dated:        October 26, 2018


Respectfully submitted,


By: /s/   *Frank H. Spruiell*

Frank H. Spruiell, Jr.,  La. Bar No. 1611
Reid A. Jones, La. Bar No. 34611
WIENER, WEISS & MADISON
A Professional Corporation
333 Texas Street, Suite 2350 (71101)
P. O. Box 21990
Shreveport, Louisiana  71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
Email:  fspruiell@wwmlaw.com
Email:  rjones@wwmlaw.com

Jodi Avergun (*pro hac vice*), N.Y. Bar No. 2166668
Keith Gerver (*pro hac vice*), N.Y. Bar No. 5049846
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

Joshua Arnold (*pro hac vice*), N.Y. Bar No. 4718714
William Simpson (*pro hac vice*), N.Y. Bar No. 5587076
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Counsel for Morris & Dickson Co., LLC*

Michael A. Carvin (*pro hac vice*), D.C. Bar No. 366-784
JONES DAY LLP
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Telephone:  (202) 879-7643
Facsimile:  (202) 626-1700

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 26th day of October, 2018, I have served a copy of the above and foregoing on all counsel of record through the Court's CM/ECF system.

<u>     s/   *Frank H. Spruiell*     </u>

Frank H. Spruiell