UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**MORRIS & DICKSON CO., LLC**   )   CASE NO. 5:18-CV-01406
                  )
VERSUS            )   JUDGE FOOTE
                  )
**JEFFERSON B. SESSIONS, III, ET AL.** )   MAGISTRATE JUDGE HORNSBY

---

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants the U.S. Drug Enforcement Administration ("DEA"), Acting DEA Administrator Uttam Dhillon, the U.S. Department of Justice, and Attorney General Jefferson B. Sessions, III ("Defendants"), through undersigned counsel, file this Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

   I.   STATUTORY AND REGULATORY BACKGROUND ..........................................3

   II.   PROCEDURAL HISTORY .................................................................................5

LEGAL STANDARD ...........................................................................................................6

ARGUMENT .......................................................................................................................7

   I.   PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS ........................7

     A.   The Court Lacks Jurisdiction Over This Collateral Attack On DEA's Administrative Process. ..................................................................................7

        1.   The CSA creates a comprehensive an exclusive review scheme .................9

        2.   Plaintiff's Challenge to the Appointment and Removal of DEA ALJs Falls Within the CSA's Review Scheme .....................................................11

     B.   Plaintiff's Collateral Attack on the Agency's Administrative Process Is Also Not Ripe for Review .......................................................................................15

   II.   ALLOWING DEA'S ADMINISTRATIVE PROCEEDINGS TO CONTINUE WOULD NOT IMMINENTLY OR IRREPARABLY HARM PLAINTIFF. ...................19

   III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR THE CONTINUATION OF THE ADMINISTRATIVE PROCEEDINGS. ...................22

CONCLUSION .................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) .......................................................................................................... 15, 17

*Am. Airlines, Inc. v. Herman,*
   176 F.3d 283 (5th Cir. 1999) .......................................................................................... 17, 19

*Arch Coal, Inc. v. Acosta,*
   888 F.3d 493 (D.C. Cir. 2018) ................................................................................7, 10, 11, 12

*Atlanta Gas Light Co. v. Fed. Power Comm'n,*
   476 F.2d 142 (5th Cir. 1973) ................................................................................................20

*Bebo v. SEC,*
   799 F.3d 765 (7th Cir. 2015) ................................................................................2, 9, 12, 13

*Bennett v. SEC,*
   844 F.3d 174 (4th Cir. 2016) ..........................................................................................passim

*Bennett v. Spear,*
   520 U.S. 154 (1997) ..............................................................................................................15

*Chau v. SEC,*
   72 F. Supp. 3d 417 (S.D.N.Y. 2014) ....................................................................................13

*Colombia Nitrogen Corp. v. FPC,*
   559 F.2d 377 (5th Cir. 1977) ................................................................................................20

*Compensation Dep't of Dist. Five v. Marshall,*
   667 F.2d 336 (3d Cir. 1981) .................................................................................................10

*Elgin v. U.S. Dep't of Treasury,*
   567 U.S. 1 (2012) ............................................................................................................passim

*Energy Transfer Partners, L.P. v. FERC,*
   567 F.3d 134 (5th Cir. 2009) ..........................................................................................passim

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
   762 F.2d 464 (5th Cir. 1985) ................................................................................................22

*Exxon Chems. Am. v. Chao,*
   298 F.3d 464 (5th Cir. 2002) ................................................................................................19

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) ..............................................................................................................12

*FTC v. Standard Oil,*
  449 U.S. 232 (1980) ...........................................................................................passim

*Gonzales v. Oregon,*
  546 U.S. 243 (2006) ...................................................................................................3

*Gonzalez v. Manjarrez,*
  558 F. App'x 350 (5th Cir. 2014) .............................................................................8

*Google, Inc. v. Hood,*
  822 F.3d 212 (5th Cir. 2016) ................................................................................ 6, 7

*Hill v. SEC,*
  825 F.3d 1236 (11th Cir. 2016)........................................................................passim

*House the Homeless, Inc. v. Widnall,*
  94 F.3d 176 (5th Cir. 1996) .......................................................................................6

*Jarkesy v. SEC,*
  803 F.3d 9 (D.C. Cir. 2015).........................................................................7, 9, 13, 14

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't,*
  849 F.3d 615 (5th Cir. 2017) .....................................................................................6

*John Doe, Inc. v. DEA,*
  484 F.3d 561 (D.C. Cir. 2007) ............................................................................ 9, 11

*Jordan v. Fisher,*
  813 F.3d 216 (5th Cir. 2016) ................................................................................ 6, 7

*Kemlon Prod. & Dev. Co. v. United States,*
  638 F.2d 1315 (5th Cir.), *modified,* 646 F.2d 223 (5th Cir. 1981)........................22

*Keysource Med. Inc. v. Holder,*
  No. 1:11-cv-393, 2011 WL 3608097 (S.D. Ohio Aug. 16, 2011) ................... 3, 24

*Leedom v. Kyne,*
  358 U.S. 184 (1958) .................................................................................................19

*Louisville & Nashville R.R. Co. v. Donovan,*
  713 F.2d 1243 (6th Cir. 1983)..................................................................................10

*Lucia v. SEC,*
  138 S. Ct. 2044 (2018)...............................................................................2, 6, 15, 20

*Masters Pharm., Inc. v. DEA,*
      861 F.3d 206 (D.C. Cir. 2017) ....................................................................23

*Matrix Partners VIII, LLC v. Natural Res. Recovery,*
      No. 08-cv-547, 2009 WL 175132 (E.D. Tex. Jan. 23, 2009) ....................................6

*McGee v. United States,*
      402 U.S. 479 (1971) ....................................................................14

*Moore v. City of East Cleveland*, 431 U.S. 494 (1977) ....................................................................21

*MPHJ Tech. Invs., LLC v. FTC,*
      No. W-14-CV-011, 2014 WL 12495297 (W.D. Tex. Sept. 16, 2014) ..........................17, 20

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
      538 U.S. 803 (2003) ....................................................................15

*Nken v. Holder,*
      556 U.S. 418 (2009) ....................................................................6

*Oregon v. Ashcroft,*
      368 F.3d 1118 (9th Cir. 2004) ....................................................................10

*Park Irmat Drug Corp. v. Optumrx, Inc.,*
      152 F. Supp. 3d 127 (S.D.N.Y. 2016) ....................................................................24

*Pennzoil Co. v. FERC,*
      645 F.2d 394 (5th Cir. 1981) ....................................................................15, 19

*Pennzoil Co. v. FERC,*
      742 F.2d 242 (5th Cir. 1984) ..........................................................17, 20

*Petroleum Exploration, Inc. v. Pub. Serv. Comm'n,*
      304 U.S. 209 (1938) ....................................................................20

*Pipkin v. La Dep't of Corr.,*
      No. 17-CV-1113, 2017 WL 3974248 (W.D. La. Sept. 7, 2017) ....................................7

*Public Utilities Commission of California v. United States,*
      355 U.S. 534 (1958) ....................................................................21

*Renegotiation Bd. v. Bannercraft Clothing Co.,*
      415 U.S. 1 (1974) ....................................................................20

*Rochester Tel. Corp. v. United States,*
      307 U.S. 125 (1939) ....................................................................15

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
205 F. Supp. 3d 4 (D.D.C. 2016) ...........................................................................22

*Stockman v. F.E.C.,*
138 F.3d 144 (5th Cir. 1998) ...............................................................................19

*Sturm, Ruger & Co., Inc. v. Chao,*
300 F.3d 867 (D.C. Cir. 2002) .............................................................................11

*Texas v. U.S. Dep't of Energy,*
764 F.2d 278 (5th Cir. 1985) ...............................................................................17

*Texas v. United States,*
497 F.3d 491 (5th Cir. 2007) ...............................................................................15

*Thunder Basin Coal Co. v. Reich,*
510 U.S. 200 (1994) .................................................................................... 1, 7, 8

*Tilton v. SEC,*
824 F.3d 276 (2d Cir. 2016) ...............................................................2, 9, 12, 13

*TOTAL Gas & Power N. Am., Inc. v. FERC,*
859 F.3d 325 (5th Cir. 2017) .............................................................2, 16, 18

*United Church of the Medical Center v. Medical Center Commission,*
689 F.2d 693 (7th Cir. 1982) ...............................................................................21

*United States v. Feaster,*
410 F.2d 1354 (5th Cir. 1969) .............................................................................19

*USAA Fed. Sav. Bank v. McLaughlin,*
849 F.2d 1505 (D.C. Cir. 1988) ..........................................................................13

*Valley v. Rapides Parish School Board,*
118 F.3d 1047 (5th Cir. 1997) .............................................................................21

*Veldhoen v. U.S. Coast Guard,*
35 F.3d 222 (5th Cir. 1994) .................................................................................19

*Volney Felt Mills v. Le Bus,*
196 F.2d 497 (5th Cir. 1952) ...............................................................................18

*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982) .............................................................................................24

*Winter v. Nat'l Res. Def. Council, Inc.,*
555 U.S. 7 (2008) .................................................................................................24

**Statutes**

21 U.S.C § 823(b) ................................................................................4

21 U.S.C § 823(e) ................................................................................4

21 U.S.C. § 801(2) ...............................................................................3

21 U.S.C. § 821 ....................................................................................3

21 U.S.C. § 822 ....................................................................................3

21 U.S.C. § 823(b) ...............................................................................4

21 U.S.C. § 824(a) ..............................................................4, 9, 11, 21

21 U.S.C. § 824(c) .................................................................4, 9, 18

21 U.S.C. § 844a(g) ...........................................................................10

21 U.S.C. § 877 ............................................................................passim

33 U.S.C. § 921(c) .............................................................................10

## INTRODUCTION

As this Court is aware, this is Plaintiff Morris & Dickson's second recent lawsuit against DEA pertaining to the agency's preliminary findings that Plaintiff shipped thousands of unusually large orders of oxycodone and hydrocodone, without keeping records of any due diligence efforts.  The first lawsuit ended when DEA voluntarily withdrew its immediate suspension order barring Plaintiff from distributing controlled substances during the pendency of the administrative proceedings.  The withdrawal permitted Plaintiff to continue its business without restriction while the administrative process, designed to test DEA's allegations that Plaintiff committed serious violations of the Controlled Substances Act ("CSA") and its implementing regulations, ran its course.

DEA has not sought to reimpose the immediate suspension order.  Instead, it has done what Plaintiff previously argued it should do: commence administrative proceedings to determine whether any action should be taken against Plaintiff.  Now, on the eve of the administrative trial that would allow Plaintiff to present evidence in defense of its business practices, it has come to this Court in search of a preliminary injunction that would indefinitely suspend the administrative process while the Court considers a constitutional question of first impression regarding the appointment and removal of the assigned Administrative Law Judge ("ALJ").

Although DEA stands prepared to defend its ALJs' appointment, as demonstrated by the Attorney General's recent ratification of those ALJs, and their removal provisions, the Court need not reach those issues to deny Plaintiff's motion.  Plaintiff's improper collateral attack on the administrative process established in the CSA undermines Congress's intent and is, in any event, premature.

The Supreme Court has repeatedly held that a litigant who seeks to challenge the action of an agency must do so in the manner Congress has specified.  *See, e.g., Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).  In the CSA, Congress established a comprehensive scheme for entities like Plaintiff to defend proposed actions relating to their registrations first through an administrative process and then, if "aggrieved by a final decision" to seek judicial review in a federal court of appeals.  21 U.S.C. § 877.  Nowhere in that scheme did Congress provide for district court jurisdiction.

Plaintiff is not the first party to try to short-circuit administrative proceedings by raising ALJ Appointments Clause and Article II challenges in district court.  In the lead up to the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018)—on which Plaintiff's claims are based—four courts of appeals addressed virtually identical district court demands by plaintiffs to enjoin administrative proceedings to test the constitutionality of the appointment and removal of SEC ALJs.  In every one of these cases, the court held that the plaintiffs were required to proceed through the administrative review scheme established by Congress rather than rushing to federal court.  *See Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015).

At the same time, the Fifth Circuit has rejected as unripe attempts by entities raising constitutional and statutory challenges to an agency's administrative review scheme to seek injunctive relief in federal court before the administrative process has concluded.  *See, e.g.*, *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134 (5th Cir. 2009); *TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325 (5th Cir. 2017).  Plaintiff here remains free to sell opioids and other pharmaceuticals without restriction while the administrative process takes its course.  And the outcome of that process is, at this point, unknowable.  Should the Administrator ultimately decide in Plaintiff's favor, it would be entirely unnecessary to reach the novel constitutional question Plaintiff poses.

The absence of a likelihood of success on the merits alone defeats Plaintiff's motion  But the equities too favor the government.  Plaintiff seeks to shutter the DEA's administrative process until the agency and Congress has implemented changes to the statutory and regulatory systems for appointing and removing ALJs that Plaintiff asserts are necessary, or the Supreme Court confirms their constitutionality.  Not only is such an outcome inconsistent with the statutory scheme, it risks rendering the agency powerless—indefinitely—to act on registrations of companies contributing to the national opioid crisis.  That is not an outcome this Court should risk, particularly where Plaintiff is free to continue its business during the pendency of the administrative process.

In testimony before this Court during Plaintiff's first lawsuit, Plaintiff vehemently disputed the administrative charges against it.  It now has the opportunity to present that evidence to the agency

and to seek judicial review of any decision against it, as Congress specified.  To prevent that process from being delayed indefinitely and to preserve the DEA's critical oversight and enforcement role, this Court should deny Plaintiff's motion.[1]

## BACKGROUND

### I.   STATUTORY AND REGULATORY BACKGROUND

In 1970, Congress enacted the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. §§ 801–971 (the "CSA"), based on a finding that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people."  21 U.S.C. § 801(2); *see also Gonzales v. Oregon*, 546 U.S. 243, 250 (2006) (CSA's "main objectives [are] combating drug abuse and controlling the legitimate and illegitimate traffic in controlled substances").  The CSA authorizes DEA to regulate the distribution of controlled substances with the goal of creating a closed system of distribution. *Keysource Med. Inc. v. Holder*, No. 1:11-cv-393, 2011 WL 3608097 (S.D. Ohio Aug. 16, 2011).  As part of that authority, DEA Diversion Control Division regulates every link in the prescription-drug supply chain and bears responsibility for regulating all DEA registrants.

Every person or entity who manufactures, distributes, dispenses, imports, or exports any controlled substance or who proposes to engage in those activities must obtain a registration with DEA.  21 C.F.R. § 1301.11; *see also* 21 U.S.C. §§ 821, 822. Registrants are subject to recordkeeping, reporting, and security requirements relating to controlled substances, and each DEA registrant must ensure the integrity of the closed system established by Congress in the CSA.  As relevant here, distributors are required to "maintain[] . . . effective control against diversion of particular controlled

---

[1] Defendants note that on November 1, 2018, the ALJ in this matter granted Plaintiff's motion to stay the administrative proceedings, including the evidentiary hearing previously set for November 13, "until either (1) January 7, 2019, or until (2) the United States District Court for the Western District of Louisiana rules on Respondent's motions for injunctive and declaratory relief . . . whichever occurs first."  ECF No. 22 (ALJ Order of Nov. 1, 2018) at 3.  For present purposes, Defendants construe this stay as being tied to this Court's resolution of Plaintiff's Motion for Preliminary Injunction.  To the extent that there is any ambiguity about whether the ALJ's stay extends beyond the resolution of Plaintiff's Motion for Preliminary Injunction—until, for instance, all district court litigation is resolved—such a reading would mean that Plaintiff's Motion for a Preliminary Injunction is moot.

substances into other than legitimate medical, scientific, and industrial channels . . . ," 21 U.S.C § 823(b)(1), and to "design and operate a system to disclose to the registrant suspicious orders of controlled substances" and, in turn, to disclose those suspicious orders to DEA, 21 C.F.R. § 1301.74.

DEA has authority to revoke or suspend a party's registration for a variety of reasons, including that a registrant "has committed such acts as would render his registration . . . inconsistent with the public interest." 21 U.S.C. § 824(a)(4). One factor in determining if a distributor has failed to act in the public interest is the "maintenance of effective control[s] against diversion." *Id.* §§ 823(b)(1), (e)(1). Prior to suspending or revoking a party's registration, DEA must issue an order to show cause describing the legal and factual basis for initiating proceedings and also allowing for an administrative hearing. *Id.* § 824(c); 21 C.F.R. § 1301.37(c).

Prior to the evidentiary hearing, each party (DEA[2] and the registrant) must identify witnesses, *see* 21 C.F.R. § 1316.54(d), and submit "all documentary evidence and affidavits to be marked for identification," *id.* § 1316.54(e); *see also id.* § 1316.57 (allowing supplementation of the disclosures). An ALJ presides over the evidentiary portion of the hearing and has several delegated powers incident to that function, including the ability to receive evidence, hear witnesses, and consider the parties' arguments. *Id.* § 1316.59; *id.* § 1316.52(d). Following the receipt of testimony and evidence, the ALJ submits a recommended decision and proposed rulings on issues of fact and law to the Administrator of DEA, along with a certified transcript of the testimony and exhibits. *Id.* § 1316.65(a), (c). The parties to the adjudication may submit exceptions challenging the ALJ's findings and determinations. *Id.* § 1316.66(a). As soon as practicable, the Administrator publishes a "final order" announcing his decision, along with findings of fact and conclusions of law and the effective date of any action, in the Federal Register. *Id.* § 1301.46; *id.* § 1316.67. "[A]ny person aggrieved by a final decision" of the Administrator, which includes the "final determinations, findings, and conclusions," may then seek judicial review before a federal appellate court within thirty days. 21 U.S.C. § 877.

---

[2] DEA is represented in the hearing by the Office of Chief Counsel's Diversion and Regulatory Litigation Section. In analyzing the record and preparing the final order, the Administrator is assisted by attorney-advisors who are independent of the Office of Chief Counsel.

## II.   PROCEDURAL HISTORY

On May 2, 2018, the Administrator issued an Order to Show Cause and Immediate Suspension of Registration to Plaintiff, affording it an opportunity to show, by July 9, that its continued DEA registration was not inconsistent with the public interest under 21 U.S.C. § 823(b).  The Order also notified Plaintiff of its right to request a hearing.[3]

On May 18, Plaintiff requested a hearing under 21 U.S.C. § 824(c).  Plaintiff and DEA filed their Prehearing Statements on August 3, and on August 10, the ALJ held a Prehearing Conference.  Three days later, ALJ Dorman issued his Prehearing Ruling, which set October 23, 2018 as the deadline for all motions and written objections, and November 13, 2018 as the hearing date.   On October 23, DEA filed two motions relating to the admissibility of Plaintiff's proposed evidence.  Plaintiff filed no motion or objections on or before October 23, but responded to DEA's motions on October 30.  Plaintiff subsequently moved for leave to supplement its prehearing disclosures to add information regarding Plaintiff's purported remedial measures.

The Attorney General ratified the prior appointment of all DEA ALJs and "approved these appointments as [his] own under the Constitution" on October 25, 2018.  On October 26, Plaintiff filed its complaint and motion for preliminary injunction in this Court.  *See* ECF Nos. 1 (Complaint), 2-1 (Plaintiff's Motion for Preliminary Injunction, herein after "Pl. Mot.").  That same day, Plaintiff asked ALJ Dorman to stay all deadlines—including the November 13 hearing—pending resolution of its preliminary injunction motion.  The motion and complaint principally contend that the DEA ALJ is an inferior officer of the United States whose appointment and removal protections violate the

---

[3] The May 2 Order also contained an Immediate Suspension Order ("ISO"), issued under 21 U.S.C. § 824(d), which suspended Plaintiff's DEA registration on that date.  The following day, Plaintiff filed an action in this Court challenging only the ISO—under the Due Process Clause and the Administrative Procedure Act—and seeking a temporary restraining order that would enjoin the ISO from taking effect.  *See Morris & Dickson Co., LLC v. Sessions*, No. 5:18-cv-0605 (W.D. La.), ECF Nos. 1 (Complaint), 2-2 (Mot. for TRO).  On May 8, the Court granted the requested TRO and set a briefing schedule for Plaintiff's subsequent motion for preliminary injunction.  *Id.*, ECF No. 16 (Order Granting TRO).  Before briefing on Plaintiff's motion for preliminary injunction was complete, the Acting Administrator issued an order rescinding the ISO but leaving in place the Order to Show Cause.  *Id.*, ECF No. 28 (Notice of Rescission).  The Court subsequently dismissed the action without prejudice as moot.  *Id.*, ECF Nos. 31 (Notice of Dismissal); ECF No. (Judgment).

Appointments Clause and Article II of the Constitution.  Pl. Mot. at 1-3 (citing *Lucia*, 138 S. Ct. 2044).

On November 1, 2018, ALJ Dorman granted Plaintiff's motion for a stay of the November 13 hearing,

ordering that all deadlines be stayed until January 7, 2019 or until this Court rules on Plaintiff's motion

for a preliminary injunction.

**LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy that should not be granted unless" the

plaintiff shows "a substantial threat" of irreparable injury, "a substantial likelihood" of success on the

merits, that the "threatened injury" to the plaintiff "outweighs the threatened harm" to the defendant,

and that "granting the preliminary injunction will not disserve the public interest." *Google, Inc. v. Hood*,

822 F.3d 212, 220 (5th Cir. 2016) (citation omitted).  Due to its "extraordinary" nature, no preliminary

injunction should be "granted unless the party seeking it has clearly carried the burden of persuasion

on all four requirements." *Jordan v. Fisher*, 813 F.3d 216, 221 (5th Cir. 2016) (citation omitted).  When

the Government is a party to the litigation, however, the public interest and balance-of-the-equities

factors merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  "The Fifth Circuit frequently cautions

that . . . 'the decision to grant a preliminary injunction is to be treated as the exception rather than the

rule.'" *Matrix Partners VIII, LLC v. Natural Res. Recovery*, No. 08-cv-547, 2009 WL 175132, at *6 (E.D.

Tex. Jan. 23, 2009) (alteration omitted) (quoting *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180

(5th Cir. 1996)).

Regardless of the other factors, a movant is not entitled to a preliminary injunction unless it

can demonstrate a likelihood of success on the merits.  *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson

Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017) ("Though there is no particular degree of likelihood of

success that is required in every case, the party seeking a preliminary injunction must establish at least

some likelihood of success on the merits before the court may proceed to assess the remaining

requirements." (citation omitted)).  Further, the movant bears the burden of persuasion on *each* of the

four factors.  *See, e.g.*, *Hood*, 822 F.3d at 220; *Fisher*, 813 F.3d at 221; *see also Pipkin v. La Dep't of Corr.*,

No. 17-CV-1113, 2017 WL 3974248, at *1 (W.D. La. Sept. 7, 2017) (Foote, J.) ("Injunctive relief is an extraordinary remedy which requires the applicant to unequivocally show the need for its issuance.").

## ARGUMENT

## I.    PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS.

### A.    The Court Lacks Jurisdiction Over This Collateral Attack On DEA's Administrative Process.

In the CSA, Congress created a detailed administrative review scheme to resolve legal and factual questions regarding a person or entity's registration to distribute pharmaceuticals, including its suspension or revocation.  That scheme channels review of these questions through DEA's administrative process and then to direct review in a federal court of appeals.  This comprehensive scheme does not at any point envision proceedings in district court, let alone the premature collateral challenge Plaintiff has initiated here.  Four courts of appeals have rejected virtually identical attempts by plaintiffs to circumvent administrative proceedings to challenge the constitutionality of ALJs.  This Court should follow suit.

When a statute expressly provides for judicial review following review by an administrative body, "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018) (quoting *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015)).  Thus, if a claim can be "meaningfully addressed in the Court of Appeals" under an exclusive statutory review scheme, district courts lack jurisdiction. *Thunder Basin*, 510 U.S. at 215.  "Under *Thunder Basin*'s framework, courts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." *Arch* Coal, 888 F.3d at 498 (quoting *Jarkesy*, 803 F.3d at 15).

This framework applies with equal force to constitutional claims. *Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1, 10 (2012) ("[T]he appropriate inquiry is whether it is 'fairly discernible'" from the statutory

scheme that Congress intended plaintiffs "to proceed exclusively through the statutory review scheme, even in cases in which [they] raise constitutional challenges to federal statutes.").  Thus, district courts lack jurisdiction where plaintiffs seek to bypass exclusive remedial schemes to raise such claims, even though they are constitutional in nature.  *See, e.g.*, *id.* at 8 (constitutional challenge to employment decisions precluded by Civil Service Reform Act); *Thunder Basin*, 510 U.S. at 215-16 ("'fairly discernible' intent to preclude district court review" of constitutional challenge seeking to enjoin enforcement proceedings of the Mine Safety and Health Administration); *Gonzalez v. Manjarrez*, 558 F. App'x 350, 353-54 (5th Cir. 2014) (district court lacked jurisdiction over *Bivens* claim because Civil Service Reform Act's review "scheme was 'exclusive' with regard to constitutional claims").

In *Elgin*, for example, the plaintiffs brought constitutional challenges in district court to agency employment decisions based on the plaintiffs failure to register for the Selective Service.  567 U.S. at 7.  Though the Civil Service Reform Act ("CSRA") provides for an administrative review process followed by direct appeal to the Federal Circuit, the petitioners attempted to assert their constitutional claims in district court in the first instance.  *Id.* at 6-7.  The Supreme Court held that the CSRA's review scheme was exclusive, thus barring district court review, "even for employees who bring constitutional challenges."  *Id.* at 13.  Indeed, the petitioners were required to proceed through the administrative process even if the agency—there, the Merit Systems Protection Board—lacked the authority to declare a federal statute unconstitutional.  *Id.* at 16-17.[4]

Since *Elgin*, several courts of appeals have addressed similar attempts to enjoin administrative proceedings by entities challenging the constitutionality of the appointment or removal of ALJs.  These courts have unanimously held that an exclusive statutory review scheme precludes district court jurisdiction over such claims.  *See, e.g.*, *Bennett*, 844 F.3d at 177-78 (challenge to appointment and removal of ALJs); *Hill*, 825 F.3d at 1240 (same); *Tilton*, 824 F.3d at 279-80 (same); *Bebo*, 799 F.3d at

---

[4] For this reason, ALJ Dorman's suggestion that he lacks authority to rule on the constitutionality of his appointment as an ALJ is irrelevant to the question of this Court's jurisdiction under the CSA's exclusive review scheme.  *See* ECF No. 22 (ALJ Order of Nov. 1, 2018) at 3.  Even if the ALJ believes – as the MSPB believed in *Elgin* – that he is "not in a position to rule on" the constitutional issues Plaintiff raises, the CSA's comprehensive review scheme deprives this Court of jurisdiction over those issues.  *Id.*

768 (challenge to removal of ALJs); *see also Jarkesy*, 803 F.3d at 16-17 (asserting various constitutional challenges to administrative proceedings before ALJ).  The present context provides no reason to depart from the weight of this authority, as the CSA unambiguously reflects Congress's intent to channel review of claims like Plaintiff's through an exclusive statutory review scheme.

1.      *The CSA Creates a Comprehensive and Exclusive Review Scheme.*

As in the statutory schemes at issue in *Thunder Basin*, *Elgin*, and the SEC ALJ cases, the CSA comprehensively channels review through a detailed administrative process.

Disputes regarding the suspension or revocation of a DEA registration proceed first before the agency.  The Administrator initiates the suspension or revocation process by issuing an order to show cause under 21 U.S.C. § 824(c).  At that point, the registrant is entitled to seek a hearing before an ALJ.  *See id.* § 824(c)(2)(B); *id.* § 875; 21 C.F.R. § 1301.43.  The registrant has the opportunity to present evidence and arguments challenging the allegations to the ALJ, and to contest an adverse ruling by the ALJ to the Administrator.  *See* 21 C.F.R. § 1316.59; *id.* § 1316.52; *id.* § 1316.66(a); *see also* 21 U.S.C. § 824(a) (Attorney General authorized to suspend or revoke registration); 21 C.F.R § 0.100 (authority delegated to Administrator).  This administrative scheme is materially identical to the administrative scheme at issue in the SEC ALJ cases.  *See, e.g.*, *Hill*, 825 F.3d at 1238.

After that administrative process has been completed, a party dissatisfied with the Administrator's final decision "may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located." 21 U.S.C. § 877.  By its plain text, § 877 channels judicial review of all claims related to the suspension or revocation of a registration to the courts of appeals.  *See, e.g.*, *John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007) (holding that "§ 877 vests exclusive jurisdiction in the courts of appeals" over all final decision "of the DEA applying the CSA," and noting that "almost all cases challenging DEA decisions under the CSA have been filed directly in the courts of appeals"); *see also Oregon v. Ashcroft*, 368 F.3d 1118, 1120 & n.1 (9th Cir. 2004) (court of appeals had "original jurisdiction pursuant to § 877").  Its language—"any person aggrieved by a final decision"—is comprehensive, applying to

9

all final orders of the Administrator, without any exception for constitutional claims.  *See Hill*, 825 F.3d at 1243 (judicial review provision that "cover[ed] all final Commission orders without exception" reflected Congress's intent to cover "any challenge to a final Commission order, even one framed as a constitutional challenge to the administrative process itself"); *see also Elgin*, 567 U.S. at 13 (relying on absence of language in CSRA distinguishing between constitutional and nonconstitutional claims). Given the Administrator's frequent adjudication of some constitutional claims—such as Fifth Amendment claims—the absence of an exception for constitutional claims is particularly telling.  *See Elgin*, 567 U.S. at 12 (observing that the CSRA requires the MSPB to "adjudicate[] some constitutional claims, such as claims . . . [concerning] First or Fourth Amendment rights").

The broad language of the CSA's judicial review provision is virtually identical to the judicial review provision in the Black Lung Benefits Act ("BLBA"), which several courts of appeals have held creates an exclusive statutory review scheme.  *See, e.g., Arch Coal*, 888 F.3d at 499-500; *Compensation Dep't of Dist. Five v. Marshall*, 667 F.2d 336, 340 (3d Cir. 1981); *Louisville & Nashville R.R. Co. v. Donovan*, 713 F.2d 1243, 1246 (6th Cir. 1983).  The BLBA provides that any person "adversely affected or aggrieved by a final order of the Board may obtain review of that order" in a federal court of appeals. 33 U.S.C. § 921(c).  This language, which mirrors that of § 877, "cannot be distinguished from" the exclusive statutory schemes at issue in *Thunder Basin*, *Elgin*, and *Jarkesy*.  *Arch Coal*, 888 F.3d at 499.

Congress's intent to preclude district court review here is further evidenced by its provision for district court review of DEA action in limited circumstances not present here.  *See* 21 U.S.C. § 844a(g) (where Attorney General issues civil penalty for possession of controlled substances, subject of order "may . . . bring a civil action in the appropriate district court of the United States").  Congress's express decision to authorize district court review only for these types of claims "demonstrates that Congress knew how to provide alternative forums for judicial review based on the nature of a[] . . . claim." *Elgin*, 567 U.S. at 13.  "That Congress declined to include an exemption from" direct court of appeals review for challenges like Plaintiff's "indicates that Congress intended no such exception." *Id.*; *see also Arch Coal*, 888 F.3d at 499 ( "express[] authoriz[ation]" of district court jurisdiction "in only two narrow circumstances . . . leaves no role for district court review" of other cases).

Though the text of § 877 only applies to "final decision[s]" of the Administrator, that shows only Congress's intent that the administrative process be completed before judicial review is available in the appropriate court of appeals. *See Hill*, 825 F.3d at 1243 (holding that plaintiff's claims regarding the appointment and removal of SEC ALJs "challenge[d] Commission . . . action which, if allowed to proceed, necessarily will result in a final . . . order," and as such "are essentially objections to forthcoming . . . orders").  A contrary interpretation of § 877 would turn Congress's administrative process on its head.  As a matter of course, parties would be able to short-circuit any administrative proceeding by running to district court before the Administrator can issue a final decision.  Allowing parties to preempt proceedings this way would undermine Congress's explicit grant of authority to the Attorney General to suspend or revoke registrations.  *See* 21 U.S.C. § 824(a); *John Doe*, 484 F.3d at 570 (permitting plaintiffs to circumvent § 877 would "encourage[] forum shopping and encourage[] dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case instead of exhausting their administrative remedies before the agency").  In fact, such a reading would permit parties to fully litigate revocation proceedings before an ALJ, and then, if dissatisfied with the ruling, seek district court review before the Administrator could act on the ALJ's recommendation.  That is not what Congress intended.  "Rather than allowing the statutory review process to run its course—a course that will eventually lead back to a court of appeals," Plaintiff seeks "to make an end run around that process by going directly to district court."  *Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 876 (D.C. Cir. 2002).  The Court's "obligation to respect the review process by Congress" should bar it "from permitting [Plaintiff] to make this end run."  *Id.*

2.    *Plaintiff's Challenge to the Appointment and Removal of DEA ALJs Falls Within the CSA's Review Scheme.*

When Congress sets forth a comprehensive review scheme, "[a] claim will be found to fall outside of the scope of . . .. [that] scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim is wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *Arch Coal*, 888

F.3d at 500 (citing *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)). Plaintiff cannot establish any of these factors, let alone all three.

*First*, if Plaintiff does not prevail before the Administrator, its appointment and removal claims will be subject to review in a court of appeals, which is "fully competent to adjudicate [Plaintiff's] claims." *Elgin*, 567 U.S. at 17; *see also* 21 U.S.C. § 877 (providing for judicial review of all final orders in a court of appeals). The availability of "meaningful judicial review is the most important factor in the *Thunder Basin* analysis." *Bennett*, 844 F.3d at 183 n.7; *accord Hill*, 825 F.3d at 1245; *Bebo*, 799 F.3d at 774; *Tilton*, 824 F.3d at 282.

This certain path to Article III judicial review fundamentally distinguishes this case from *Free Enterprise*, where the Supreme Court held that the federal securities law did not preclude district court review of a constitutional challenge to the Public Company Accounting Oversight Board. The key consideration in that case was that the plaintiffs were not guaranteed federal court review of their claims because the statutory scheme provided "only for judicial review of [SEC] action, and not every Board action is encapsulated in a final [SEC] order or rule." 561 U.S. at 490. Accordingly, if district court review were precluded, the plaintiffs' only avenues to federal court lay in either challenging a "random" Board rule or in violating the law—and thereby opening them up to the potential of "severe punishment"—to induce an enforcement action. *Id.* at 490-91.

Plaintiff sits in a far different position here. Plaintiff need not purposely violate the law to ensure judicial review; it must merely raise its arguments in the ongoing administrative proceedings and ultimately, if necessary, to the court of appeals. *See Hill*, 825 F.3d at 1248 (where "the respondents have already taken the actions that allegedly violate securities law," they "must take no additional risks" in order "to challenge the constitutional adequacy of the appointments of the SEC ALJs before the Commission"); *Bebo*, 799 F.3d at 774 (distinguishing *Free Enterprise* where the plaintiff was "already the respondent in a pending enforcement proceeding, so she does not need to risk incurring a sanction voluntarily just to bring her constitutional challenges before a court of competent jurisdiction").

Though Plaintiff complains that requiring it to go through the administrative process would compel it to submit to an unconstitutional proceeding, Pl.'s Mem. at 13, courts have consistently

rejected this argument, including in the ALJ context, as a basis for subverting the scheme established by Congress.   As the Seventh Circuit noted, "[e]very person hoping to enjoin an ongoing administrative proceeding could make this argument, yet courts consistently require plaintiffs to use the administrative review schemes established by Congress." *Bebo*, 799 F.3d at 775 (collecting cases); *see also FTC v. Standard Oil*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." (internal quotation marks omitted)); *Bennett*, 844 F.3d at 184-85 (rejecting argument "that an unconstitutional proceeding is, itself, the harm that she should be allowed to avoid"); *Tilton*, 824 F.3d at 286 ("[W]here the "injury" inflicted on the party seeking review is the burden of going through an agency proceeding,' the Supreme Court's decision in *Standard Oil* 'teaches that the party must patiently await the denouement of proceedings within the Article II branch." (quoting *USAA Fed. Sav. Bank v. McLaughlin*, 849 F.2d 1505, 1510 (D.C. Cir. 1988)); *Jarkesy*, 803 F.3d at 27 ("no inherent right to avoid an administrative proceeding at all"); *Chau v. SEC*, 72 F. Supp. 3d 417, 434 (S.D.N.Y. 2014) (courts have rejected "assertion that administrative respondents need not wait for actual adjudication of their cases in order to challenge their legality").

*Second*, Plaintiff's claim is not "wholly collateral" to the CSA's review scheme.  *Elgin* explained that even a facial constitutional challenge to a statute is not "wholly collateral" to a statutory review scheme where it serves as "the vehicle by which" a party seeks to reverse agency action.  567 U.S. at 22.  Here, the sole object of Plaintiff's constitutional claims is to prevent DEA from continuing to prosecute the suspension or revocation proceedings.  *See* ECF No. 1 (Compl.) ¶ 54 (seeking an order "enjoining DEA and DOJ from carrying out an administrative proceeding against" Plaintiff); ECF No. 2-2 (Prop. Order) (proposing order that Defendants "are . . . prohibited from carrying out an administrative proceeding against" Plaintiff).  Thus, these claims are central, rather than collateral, to the scheme that Congress has established for DEA to review the validity of registrations under the CSA.  *See, e.g., Tilton*, 824 F.3d at 288 (challenge to appointment and removal of ALJ was not "wholly collateral to the SEC's administrative scheme" where it "arose directly from that enforcement action and serves as an affirmative defense within the proceeding"); *Jarkesy*, 803 F.3d at 22-23 (constitutional challenges to administrative proceedings were "inextricably intertwined with the conduct of the very

enforcement proceeding the statute grants the SEC the power to institute and resolve as an initial matter" (internal quotation marks omitted)).  Indeed, should an injunction be issued, DEA would be unable to take any action on the registration during the pendency of this case.  That possibility was never envisioned by Congress when it established the CSA.

*Third*, Plaintiff's challenge falls within DEA's expertise.  *Elgin* adopted a broad conception of agency expertise, holding that the MSPB could "apply its expertise" to a facial constitutional challenge to a statute—even though the agency disclaimed authority to adjudicate that challenge—because the claim could "involve other statutory or constitutional claims," the resolution of which "in the employee's favor might fully dispose of the case."  567 U.S. at 23.  So too here.  The Administrator could conclude that DEA has not satisfied the requirements for suspending or revoking Plaintiff's registration, thereby obviating the need to reach its constitutional claims.  *See, e.g.*, *Bennett*, 844 F.3d at 187-88 (SEC "could bring its expertise to bear here by concluding that the Division of Enforcement's substantive claims are meritless, thereby fully disposing of the case before reaching the constitutional question"); *Hill*, 825 F.3d at 1250 ("As in *Elgin*, here the Commission might decide that the SEC's substantive claims are meritless and thus would have no need to reach the constitutional claims").

Indeed, permitting this case to proceed through the administrative process and then to the court of appeals, as Congress intended, is consistent with the maxim of constitutional avoidance.  "[O]ne of the principal reasons to await the termination of agency proceedings is 'to obviate all occasion for judicial review.'"  *Standard Oil*, 449 U.S. at 244 n.11 (quoting *McGee v. United States*, 402 U.S. 479, 484 (1971)).  By contrast, if the Court were to permit Plaintiff to bypass the CSA's review scheme, it would compel the Court to address the question whether the removal protections afforded to ALJs are constitutional—a question that the Supreme Court declined to address in *Lucia* and which no court of appeals has yet answered.[5]

---

[5] Though Plaintiff presents its constitutional claims as open-and-shut, that is not the case.  As Plaintiff appears to concede, the ratification of an agency's ALJs by the head of the agency cures any constitutional defect in their appointment.  *See* Pl. Mot. at 2 n.1 (citing the SEC's ratification of its ALJs as a "remedial action taken to ensure its ALJs meet the constitutional requirements articulated in *Lucia*").  Here, the Attorney General has now ratified DEA's ALJs.  And the CSRA's removal provisions for ALJs can be construed in a manner consistent with separation of powers principles, as

**B.**     **Plaintiff's Collateral Attack on the Agency's Administrative Process Is Also Not Ripe for Review.**

In addition to being jurisdictionally barred under *Thunder Basin*, Plaintiff's claims are not ripe for adjudication by this Court.  Ripeness "is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted).  "In general terms, . . . ripeness is concerned with whether the suit is being brought at the proper time."  *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007).   In evaluating ripeness, the Fifth Circuit considers:

> (1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action," within the meaning of Section 10 of the Administrative Procedure Act; (3) whether the challenged agency action has or will have a direct and immediate impact upon the [plaintiff]; and (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency.

*Energy Transfer Partners*, 567 F.3d at 139-40 (citation omitted); *Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. 1981) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-54 (1967)).  Final agency action (1) must constitute "the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and (2) "must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted); *see also Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939) (non-final agency action "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action").

Ripeness in the agency action context typically falls "on a continuum between the regulations considered in *Abbott Laboratories*," which imposed immediate and direct consequences on the daily business of regulated entities, "and the agency complaint under scrutiny in *Standard Oil*," which merely

---

explained by the United States before the Supreme Court in *Lucia*.  *Cf. Lucia*, 138 S. Ct. at 2060-62 (2018) (Breyer, J., concurring) (constitutionality of ALJ removal provisions not yet decided).

initiated administrative enforcement proceedings against a regulated entity.  *Energy Transfer Partners*, 567 F.3d at 141.  The Fifth Circuit has, on several occasions, had the opportunity to analyze whether a collateral challenge to an agency's administrative process is ripe even though that process had not yet concluded.  *See, e.g.*, *id.* at 138-39; *TOTAL Gas*, 859 F.3d at 330-31.

For example, in *Energy Transfer Partners*, a company subject to an order to show cause by the Federal Energy Regulatory Commission ("FERC") contended that a FERC ALJ lacked the statutory authority to determine whether it had violated various FERC regulations.  The company insisted that "being compelled to participate in an invalid administrative process is an injury" for which it could seek judicial review before the conclusion of that process.  *Energy Transfer Partners*, 567 F.3d at 138.  In determining that the case was not ripe, the Fifth Circuit held that (1) requiring the company to first complete the administrative process before seeking judicial review would not have a definitive impact on the rights of the parties; (2) the company could prevail on the merits in the administrative action, "thereby mooting its judicial challenge"; and (3) the burden of defending an administrative proceeding "is different in kind and legal effect from the burdens attending . . . final agency action."  *Id.* at 141-42 (citation omitted).

These same considerations compel the conclusion that Plaintiff's challenge to DEA's administrative enforcement process is not ripe.  Plaintiff here does not contend that the administrative proceedings regarding its DEA registration presently have any "legal or practical effect, except to impose upon [the company] the burden of responding to the charges made against it" by DEA, since Plaintiff's registration remains in place unless and until the Administrator makes a "final decision" to suspend or revoke it.  *Standard Oil*, 449 U.S. at 242; *see also Energy Transfer Partners*, 567 F.3d at 140. Similarly, "the effect of the judicial review sought by [Plaintiff] is likely to be interference with the proper functioning of the agency," which "denies the agency an opportunity to correct its own mistakes and to apply its expertise" and "also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary."  *Standard Oil*, 449 U.S. at 242; *see also Energy Transfer Partners*, 567 F.3d at 140-41.  If the DEA ALJ does not recommend suspension or revocation, or if the Administrator does not ultimately decide to suspend or revoke

Plaintiff's registration, the administrative proceedings would terminate without any adverse ruling against Plaintiff, thereby obviating the need for this or any other court to assess the constitutionality of the agency's administrative process.  *See supra* Pt. I.A.2.

Here, allowing the ALJ proceedings to continue ensures that the agency with the relevant expertise is able, in the first instance, to determine all of the issues in the enforcement proceeding; it also ensures that the constitutional challenge is presented for judicial review only if necessary.  On the other hand, halting or delaying the proceedings would prematurely—and possibly unnecessarily—inject judicial involvement into DEA's enforcement of the CSA.  "This is not a case in which 'no further administrative proceedings are contemplated.'"  *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 292 (5th Cir. 1999) (citing *Abbott Labs.*, 387 U.S. at 149).[6]  And "[b]eing required to participate in an agency proceeding does not constitute final agency action" ripe for review by this Court.  *MPHJ Tech. Invs., LLC v. FTC*, No. W-14-CV-011, 2014 WL 12495297, at *3 (W.D. Tex. Sept. 16, 2014).  If it were otherwise, "every respondent" to a DEA show cause order could raise the same constitutional challenge to the agency's administrative process—yet the Supreme Court has cautioned that "[j]udicial review . . . should not be a means of turning prosecutor into defendant before adjudication concludes."  *Standard Oil*, 449 U.S. at 243.

These ripeness principles apply with equal force when a litigant subject to an administrative enforcement proceeding raises a constitutional challenge to the validity of those proceedings.  In *TOTAL Gas*, the Fifth Circuit found unripe a claim that "allowing an ALJ to preside over a hearing . . . would violate the Appointments Clause," as well as the Fifth and Seventh Amendments.  859 F.3d

---

[6] Ripeness in the administrative enforcement context is closely related to the *Thunder Basin* principles, discussed *supra* Section I.A.  If courts flout the ripeness requirement, and allow a litigant to go to court before administrative proceedings conclude, they "encourage [the litigant] to forgo its opportunities" for further agency review, as set forth by Congress.  *Texas v. U.S. Dep't of Energy*, 764 F.2d 278, 284 (5th Cir. 1985).  By contrast, if courts "deny the review requested here as premature," they instead "further Congress' intent that the public hearing . . . rather than the courts, be the focus of review at this point[.]"  *Id.*; *see also Pennzoil Co. v. FERC*, 742 F.2d 242, 245 (5th Cir. 1984) (claims not ripe where "[r]eview of Pennzoil's claims at this point might serve to encourage other participants in the . . . proceeding to attempt to bypass the administrative forum presently available for the resolution").  Where Congress has established an administrative review process, ripeness helps ensure that litigants cannot bypass or short-circuit that process.

at 334.  As in *Energy Transfer Partners*, a challenge to the validity of the hearing must await a final decision by the agency, *id.* at 339—and the fact that the challenge was constitutional did not undermine that conclusion.  Accordingly, it is of no moment that Plaintiff challenges the constitutionality of the ALJ's appointment, rather than his statutory authority (as in *Energy Transfer Partners*)[7] or the basis for DEA's Order to Show Cause (as in *Standard Oil*).  All such claims would be unripe at this time.

Plaintiff seeks here, as the company did in *TOTAL Gas*, to prevent a determination on the alleged violation by raising constitutional challenges to the authority of the Tribunal.  However, as in *Total Gas*, because the agency "has not made any conclusive determination" as to the alleged violation; because Plaintiff has "raise[d] a plethora of factual and legal challenges to the allegations in the order to show cause"; and because the agency "can terminate a proceeding at any point . . . without a finding of a violation," the question whether the agency will violate Plaintiff's constitutional rights "rests on a series of contingencies and is not a certainty" and therefore is not ripe.  *Id.* at 335-37.  Crucially, in *Total Gas* the Fifth Circuit again rejected the "conten[tion] that the litigation expenses of participating in the FERC proceedings weighed in favor of finding ripeness," pointing to the Supreme Court's instruction that "'the expense and annoyance of litigation,' though 'substantial[,] . . . is part of the social burden of living under government,' and thus cannot constitute sufficient hardship for ripeness."  *Id.* at 338.  After all, Plaintiff will have its constitutional claim adjudicated in federal court; it cannot be injured by the fact that it must do so at the time and in the place that Congress has specified.  *See Volney Felt Mills v. Le Bus*, 196 F.2d 497, 498 (5th Cir. 1952) ("Appellant is not, as it claims, standing remediless, its constitutional rights invaded and taken away without affording it a judicial hearing.  Its day in court will come, and soon, if it presses its available remedies." (footnote omitted)).

In sum, time and again the Fifth Circuit has rejected the argument that "forcing [a litigant] to

---

[7] In *TOTAL Gas*, the agency had issued an order to show cause, and the company had "concede[d] that [the agency] has the authority to conduct a proceeding regarding the alleged violation" under the relevant statute but challenged the validity of the ALJ's appointment.  *Total Gas*, 859 F.3d at 335.  The same is true here; while Plaintiff raises the same Appointments Clause claim at issue in *TOTAL Gas*, Plaintiff does not contest that the Order to Show Cause and the proceedings before the ALJ are authorized by statute, here 21 U.S.C. § 824(c)(4).

wait to litigate 'seminal issues'" until the conclusion of the administrative process—including constitutional ALJ issues—is unfair, inefficient, or even futile.  *Am. Airlines*, 176 F.3d at 291;[8] *see also, e.g.*, *Stockman v. F.E.C.*, 138 F.3d 144, 154 (5th Cir. 1998) ("[A]llowing the person under investigation to bring suit in district court any time he felt aggrieved by the investigation could compromise the ability of the agency to investigate and enforce the Act.").  Plaintiff's untimely constitutional challenge fits squarely into the well-settled ripeness law of this circuit; the Court might "sympathize with the [Plaintiff's] desire for rapid resolution of this issue, but in light of the lack of ripeness, . . . judicial review at this time would not be helpful."  *Pennzoil*, 645 F.2d at 400.

## II.   ALLOWING DEA'S ADMINISTRATIVE PROCEEDINGS TO CONTINUE WOULD NOT IMMINENTLY OR IRREPARABLY HARM PLAINTIFF.

Throughout the pendency of the administrative process Plaintiff seeks to halt, Plaintiff's DEA registration remains in effect, meaning that there will be no impact on the daily operations of Plaintiff's business until after the conclusion of that process—if ever.  This is a critical distinction from the prior action filed by Plaintiff in this Court in May, when Plaintiff's DEA registration had been suspended and Plaintiff was therefore prohibited from distributing controlled substances.

Because Plaintiff now faces no government restriction on its ability to distribute, the primary harm it seeks to forestall through preliminary relief here is its continued participation in DEA's administrative process—specifically, it seeks to block the next step in the process, the evidentiary hearing.  Plaintiff seeks this relief even though it has participated in DEA's administrative review

---

[8] Nor is this a case in which the *Leedom v. Kyne* exception to finality—sometimes relevant in the ripeness context, *see Energy Transfer Partners*, 567 F.3d at 143 n.52—is applicable.  For that exception is limited only to the rare circumstance in which the agency has "clearly acted 'in excess of its delegated powers and contrary to a specific prohibition in the Act'" it is charged with enforcing.  *United States v. Feaster* 410 F.2d 1354, 1365 (5th Cir. 1969) (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)); *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) (*Leedom* exception requires "plain contravention of a statutory mandate" and is an "extraordinary exception[] to the finality requirement").  Here, Plaintiff does not contend that DEA clearly exceeded its mandate under the CSA by initiating or maintaining administrative enforcement proceedings against Plaintiff pertaining to their DEA registration.  And, in any event, the Fifth Circuit has held that *Leedom* does not apply where the statutory scheme provides parties with an opportunity for meaningful judicial review of the administrative decision and process, as is true for the CSA.  *See Exxon Chems. Am. v. Chao*, 298 F.3d 464, 469 (5th Cir. 2002).

process without objection since it received an Order to Show Cause on May 2, 2018, including by submitting a Prehearing Statement and appearing, via counsel, at a Prehearing Conference before the DEA ALJ, and seeking leave to supplement its prehearing disclosures.  But as the Supreme Court has emphasized, "the expense and annoyance of litigation," even if substantial, "is part of the social burden of living under the government," and is not irreparable harm.   *Standard Oil*, 449 U.S. at 244 (citing *Petroleum Exploration, Inc. v. Pub. Serv. Comm'n*, 304 U.S. 209, 222 (1938)); *see also Pennzoil*, 742 F.2d at 244 ("We do not believe that the burden of participating in the proceeding before the ALJ is sufficient to constitute the requisite irreparable harm to Pennzoil."); *Colombia Nitrogen Corp. v. FPC*, 559 F.2d 377, 378 (5th Cir. 1977) *MPHJ Tech*, 2014 WL 12495297, at *4 (holding that where "there is no immediate impact upon the Plaintiff other than responding the [agency's] discovery requests, . . .[l]itigation expenses, even those which are substantial and unrecouperable, do not constitute irreparable injury" (citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974))).

Nor, as discussed above, is Plaintiff correct that "[m]andatory proceedings before an unconstitutionally appointed" ALJ constitute an irreparable injury.  Pl. Mot. at 14.  Courts have consistently rejected this very proposition in the context of constitutional challenges to the appointment and removal of SEC ALJs.  *See supra* Pt. I.  Indeed, *Lucia* itself demonstrates as much, for the plaintiff there participated in "nine days of testimony and argument" before the SEC ALJ, whose appointment the Supreme Court subsequently ruled had been constitutionally invalid; nevertheless, the Court never suggested that Lucia had been irreparably harmed.  138 S. Ct. at 2050. On the contrary, it held that a new hearing before a different, properly appointed ALJ would "cure the constitutional error."  *Id.* at 2055; *cf. Atlanta Gas Light Co. v. Fed. Power Comm'n*, 476 F.2d 142, 147 (5th Cir. 1973) ("[A]n 'irreparable' injury, like the effect of a 'definitive' order, cannot be redeemed by subsequent official action.").  And none of the authority cited by Plaintiff suggests that participation in administrative enforcement proceedings, even if later deemed, in some respect, unlawful or unconstitutional, constitutes *per se* irreparable harm.[9]

_____

[9] *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1056 (5th Cir. 1997), does not stand for the proposition that a constitutionally defective administrative proceeding may be "enjoined at the outset"

In addition, Plaintiff halfheartedly contends that it will suffer "reputational and economic damage . . . [i]f the DEA ALJ suspends Plaintiff's DEA registration." Pl. Mot. at 14. But there is nothing to this contention. First, an ALJ is not authorized by the CSA to suspend or revoke a DEA registration. The ALJ may only make recommendations as to suspension or revocation; only the Administrator is authorized to suspend or revoke a DEA registration. *See* 21 U.S.C. § 824(a); 28 C.F.R. § 0.100. And even if the Administrator decided to suspend or revoke its registration, Plaintiff could seek a stay pending appeal from the court of appeals, which would then review the Administrator's decision. 21 U.S.C. § 877. Plaintiff could thus secure judicial review before ever losing its registration.

Second, speculative claims of loss of reputation or future economic harm are insufficient to establish irreparable harm. *See, e.g.*, *Kemlon Prod. & Dev. Co. v. United States*, 638 F.2d 1315, 1322 (5th Cir.), *modified*, 646 F.2d 223 (5th Cir. 1981) (no irreparable injury where "conclusory pleading"

---

as a result of irreparable injury, as Plaintiff suggests. *See* Pl. Mot. at 13. In that case, a school superintendent had been removed from her position following a biased school board hearing that violated her substantive due process rights, and the Fifth Circuit affirmed a preliminary injunction reinstating her. The injunction did not prevent the allegedly unconstitutional hearing from taking place, but rather remedied the constitutional injury after the fact; moreover, what rendered the injury "irreparable" was not the "constitutionally infirm hearing" alone but also the injury to the superintendent's reputation "and her ability to procure comparable employment" after the hearing. *Valley*, 118 F.3d at 1056. *United Church of the Medical Center v. Medical Center Commission*, 689 F.2d 693, 701 (7th Cir. 1982), is similarly inapposite. That case also involved a hearing before a biased decisionmaker that had already taken place, so "[t]hat injury had already occurred, and is therefore sufficiently 'immediate' to warrant injunctive relief," unlike here. Moreover, the administrative proceedings that plaintiff sought to enjoin were state administrative proceedings, not federal administrative proceedings, and therefore the plaintiff was not required to "go through the Commission's . . . proceeding." *Id.* at 697 (noting that "[f]ederal agency proceedings are . . . governed by a strict exhaustion requirement that is simply inapplicable to state administrative proceedings"). In any event, both of those plaintiffs suffered concrete—not merely abstract, constitutional—harm as a result of the allegedly unconstitutional hearings. *See Valley*, 118 F.3d at 1056 (reputational injury and loss of employment opportunities); *United Church*, 689 F.2d at 701 (loss of real property). By contrast, Plaintiff suffers no concrete injury, not even the suspension of its DEA registration, merely by participating in the administrative process. The last two cases cited are equally unavailing: *Public Utilities Commission of California v. United States*, 355 U.S. 534, 539-40 (1958), involved a constitutional challenge to a state statute brought by the United States, and did not answer the question whether the federal government, absent preliminary injunctive relief, would be irreparably harmed. And *Moore v. City of East Cleveland*, 431 U.S. 494, 497 n.5 (1977), whose dissent Plaintiff erroneously relies on, only held that the failure to exhaust administrative remedies did not "foreclose a criminal defendant from asserting the constitutional invalidity of the statute under which she is being prosecuted."

suggesting that challenged action "would result in a loss of business reputation and . . . opportunity," but where plaintiff's submissions "in no way alleged or proved facts showing how" the business's reputation would in fact be damaged); *see also Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 474 (5th Cir. 1985) (district court abused discretion in entering preliminary injunction based in part on "finding that [company's] reputation and good will in the international marketplace would be injured," because finding was "speculative and . . . without evidentiary support," including any testimony "expert or otherwise . . on the effect . . . on [company's] good will and reputation"). Plaintiff offers no evidentiary support indicating that is likely that the Administrator will suspend or revoke its registration; should the eveidentiary hearing take place; on the contrary, Plaintiff has vigorously contested the basis for such any suspension in its pre-trial administrative submissions.

Third, even if this Court believes that the future suspension or revocation of Plaintiff's DEA registration constitutes "irreparable harm," that harm is no more or less likely to result if this Court enjoins the evidentiary hearing.   Such a delay has no impact on the Administrator's ultimate determination whether Plaintiff's registration should be suspended for non-compliance with statutory and regulatory standards governing registrants.   Importantly, Plaintiff does not assert that its reputation has suffered from the process that has already occurred in this administrative matter, nor as a result of the specter of the possible revocation of its registration in the future.   Thus, the emergency relief requested will have no impact on the asserted "irreparable injury" which is, in any event, conjectural rather than imminent.   *See, e.g., Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 34 (D.D.C. 2016) (refusing to issue preliminary injunction where plaintiff "cannot demonstrate that the temporary relief it seeks here . . . can prevent the harm" complained of).

## III.     THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR THE CONTINUATION OF THE ADMINISTRATIVE PROCEEDINGS.

"Opioids are heavily addictive and often lethal in high doses. . . .  Over the past two decades, DEA has been battling a steep increase in prescription opioid abuse—a problem that DEA views as an 'epidemic.' . . . Prescription opioids now kill an average of 44 Americans per day." *Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 211 (D.C. Cir. 2017).  According to the Centers for Disease Control and

Prevention ("CDC"), the number of deaths from prescription opioids in 2016—the most recent year for which data is available—totaled 42,249, or 13.3 per 100,000 population, a 27.9 percent rate increase from 2015. *See* Seth et al., *Overdose Deaths Involving Opioids, Cocaine, and Psychostimulants—United States, 2015-2016*, CDC (March 30, 2018), https://www.cdc.gov/mmwr/volumes/67/wr/mm6712a1.htm?s_cid=mm6712a1_w. From 1999 to 2016, over 350,000 Americans have died from opioid overdoses. *Id.* Plaintiff's requested relief would bring DEA's efforts to monitor and regulate the distribution of controlled substances to an indefinite halt, until Congress or the Supreme Court resolves the issues regarding the removal provisions for DEA ALJs. Accordingly, the balance of the equities and the public interest tip strongly in favor of continuing the administrative proceedings.

Plaintiff does not appear to dispute that preventing the illegal diversion of prescription opioids is in the public interest, or that DEA's authority to revoke or suspend the registration of non-compliant pharmaceutical distributors plays an important role in combatting illegal diversion. Yet Plaintiff essentially asks this Court to press pause for an unspecified period on DEA's exercise of that authority—in the middle of a national opioid epidemic—until the issues regarding the removal of ALJs are finally determined by either Congress, the Supreme Court, or both. *See* Compl. ¶ 54 (requesting an order enjoining any "administrative proceeding against" Plaintiff "until a constitutionally valid system is in place").

Were this Court to grant the requested injunction, indefinitely delaying the hearing intended to determine whether Plaintiff's continued DEA registration is inconsistent with the public health and safety, it would effectively allow Plaintiff to opt out of DEA's oversight altogether. This would thwart Congress's grant of authority to the agency to determine whether a registrant has violated applicable standards and, as a result, should no longer be entitled to distribute controlled substances, including opioids. And any registrant subject to DEA's enforcement proceedings could argue that the same remedy of indefinite delay should be available to them, since no aspect of this lawsuit—neither the constitutional challenge to DEA's ALJs, nor the alleged harm or equities at issue—is unique to Plaintiff. The requested relief could thus grind to a halt DEA's oversight of pharmaceutical

distribution, likely with dire consequences for the public health of the nation.

Even if the Court focuses only on Plaintiff, however, it should conclude that the equities tip in DEA's favor.  In issuing the Order to Show Cause that initiated these administrative proceedings, DEA determined that Plaintiff's continued distribution of opioids may be inconsistent with the public interest; this Court should defer to that determination—which Plaintiff has every opportunity to contest in the administrative proceedings—in considering the public interest the agency has asserted. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24-27 (2008); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").

Further, when balancing hardships in the context of a licensing or registration scheme, courts typically examine the purposes of the licensing scheme as well as the harm to an entity of losing its license.  *See, e.g.*, *Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 142 (S.D.N.Y. 2016) (pharmacy losing its accreditation might face "hardship in the form of potentially irreparable harm to its business" but injunction would "bear risks related to" plaintiff "acting as a mail-order pharmacy without the accreditations required . . . for the . . . purpose of patient safety"); *see also Keysource Med.*, 2011 WL 3608097, at *9 ("Although [registrant] has a private financial interest in continuing to sell controlled substances, it is plainly outweighed by the compelling public interest in preventing the distribution of controlled substances without adequate controls against diversion.").  The Court should not prevent DEA from testing those allegations against Plaintiff, simply because the outcome of the administrative proceedings may adversely impact Plaintiff at some unspecified point in the future.

It especially should not do so where the cost to Plaintiff at present is nothing more than its participation in the administrative proceedings, "part of the social burden of living under the government." *Standard Oil*, 449 U.S. at 244.  Because Plaintiff's registration remains active at least until the Administrator reaches a "final decision" about the propriety of its continued registration, Plaintiff is free to continue its business operations without disruption—notwithstanding DEA's allegations that Plaintiff's diversion control program is inadequate.

24

Because the requested relief could hobble DEA's performance of its essential oversight functions, and denying it would merely subject Plaintiff to an adjudicatory process that is the price of admission to the pharmaceutical distribution industry, the Court should deny Plaintiff's motion.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion for Preliminary Injunction.


Dated: November 1, 2018                              Respectfully submitted,

                                                     JOSEPH H. HUNT
                                                     Assistant Attorney General

                                                     DAVID C. JOSEPH
                                                     United States Attorney

                                                     CHRISTOPHER R. HALL
                                                     Assistant Branch Director
                                                     Federal Programs Branch

                                                     */s/ Chetan A. Patil*
                                                     CHETAN A. PATIL
                                                     Trial Attorney (DC #999948)
                                                     Federal Programs Branch
                                                     ANJALI MOTGI
                                                     Trial Attorney (Texas #24092864)
                                                     Federal Programs Branch
                                                     P.O. Box No. 883
                                                     Ben Franklin Station
                                                     Washington, D.C. 20044
                                                     Tel: (202) 305-4968
                                                     Fax: (202) 616-8470
                                                     Email: chetan.patil@usdoj.gov