# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| **MORRIS & DICKSON CO.** | **CIVIL ACTION NO.: 18-1406** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **MATTHEW G. WHITAKER, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Morris & Dickson Co. ("Morris & Dickson") is a full-line pharmaceutical wholesaler, part of whose business consists of distributing controlled substances. [Record Document 1 at 6]. Concerned that Morris & Dickson had an insufficient program in place to prevent diversion of hydrocodone and oxycodone, the Drug Enforcement Administration ("DEA") began proceedings to revoke Morris & Dickson's authorization to distribute controlled substances. [*Id.* at 8]. Morris & Dickson filed the instant action, seeking to enjoin further proceedings before the DEA's Administrative Law Judge ("ALJ") on the grounds that he was unconstitutionally appointed and is unconstitutionally shielded from removal at will. [*Id.* at 13–16]. Because this Court lacks jurisdiction over Morris & Dickson's challenge to the ongoing administrative adjudication, this case is **DISMISSED WITHOUT PREJUDICE**.

## I.    Background

Morris & Dickson holds two DEA registrations that allow it to distribute controlled substances. [*Id.* at 5]. On May 2, 2018, the Acting Administrator of the DEA began the process of revoking these registrations by issuing an Order to Show Cause and an Immediate

Suspension of Registration ("ISO"), which asserted that Morris & Dickson maintained an inadequate anti-diversion program. [*Id.* at 8]. In response, Morris & Dickson filed suit to enjoin enforcement of the ISO. [*Id.*]. Following a hearing before the undersigned, this Court temporarily restrained enforcement of the ISO, but allowed the revocation proceeding to go forward. [*Id.* at 9]. Before a hearing could be held on the motion for a preliminary injunction against the ISO, the DEA rescinded that order. [*Id.*]. This Court then dismissed the case. *Morris & Dickson Co. v. Sessions*, No. 5:18-cv-605 (W.D. La. May 22, 2018).

The DEA ALJ, Charles Dorman, set the show-cause hearing on the DEA's allegations for November 13, 2018. [Record Document 1 at 11]. In order to prevent the hearing from going forward, Morris & Dickson filed this suit, which seeks an injunction and a declaratory judgment that further proceedings before Judge Dorman would violate the Constitution. [Record Documents 1 at 18 and 2 at 2–3].

Under the Appointments Clause of Article II, inferior officers of the United States must be appointed by the President, the courts, or the heads of executive departments. *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (citing U.S. Const. art. II, § 2, cl. 2). Morris & Dickson argues that DEA ALJs are inferior officers. [Record Document 1 at 11–13]. If they are, then they must be appointed by one of the three authorities listed in the Appointments Clause. *See Lucia*, 138 S. Ct. at 2051. The Controlled Substances Act ("CSA") incorporates by reference provisions of the Administrative Procedure Act ("APA") controlling ALJs' appointments and their employment protections. *See* 21 U.S.C. 824 (citing 5 U.S.C. 551–559). [1] In

_____

[1] The CSA requires that all revocation proceedings be conducted in accordance with

accordance with these provisions, Judge Dorman was appointed by the DEA Administrator. [Record Document 1 at 14]. Morris & Dickson contends the DEA is not an executive department for purposes of the Appointments Clause because the DEA resides within the Department of Justice ("DOJ"). [*Id.* at 14–15]. If that is true, then the department head with the appointing power is the Attorney General, not the DEA Administrator. *See* 28 U.S.C. § 503. From this, Morris & Dickson concludes that Judge Dorman was unconstitutionally appointed. [Record Document 1 at 15].[2]

Morris & Dickson also alleges that the removal procedures for the DEA ALJs are unconstitutional. [*Id.* at 15–16]. The Constitution vests the President with the executive power, U.S. Const. art. II, § 1, cl. 1, and obligates him to "take Care that the Laws be faithfully executed," *id.* art. II, § 3. These provisions are violated when officers have more than one layer of protection against removal at will. *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 496 (2010). DEA ALJs, such as Judge Dorman, may be removed by the agency "only for good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a). Members of that board, in turn, "may be removed by

---

subchapter II of the APA. 21 U.S.C. § 824. Among the provisions of that subchapter is a requirement that adjudicative hearings be conducted by "(1) the agency; (2) one or more members of the body which comprises the agency; or (3) one or more administrative law judges appointed under section 3105 of this title." 5 U.S.C. § 556(b). Under § 3105, ALJs are appointed by the agency for whom they will conduct proceedings. 5 U.S.C. § 3105; *see* 21 C.F.R. § 1316.52 ("A presiding officer, designated by the [DEA] Administrator, shall preside over all hearings.").

[2] The Attorney General has ratified Judge Dorman's appointment, though the parties dispute whether this ratification satisfies the requirements of Article II. [Record Document 38].

the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Morris & Dickson argues that this double layer of for-cause protection unconstitutionally interferes with the President's obligation to take care that the laws are faithfully executed. [Record Document 1 at 16].

After reviewing Morris & Dickson's complaint, this Court ordered briefing on the question of jurisdiction. [Record Document 15]. Two days later, Judge Dorman cancelled the show-cause hearing, thereby mooting Morris & Dickson's request for an interim order enjoining it. [Record Documents 22 at 3 and 23 at 1]. After this Court set a schedule for ruling on jurisdiction and, if necessary, on the merits, Judge Dorman stayed the enforcement proceeding pending this Court's resolution of Morris & Dickson's constitutional case. [Record Documents 27, 28, and 30].

Defendants Matthew G. Whitaker (the Acting Attorney General), Uttam Dhillon (the Acting Administrator of the DEA), the DEA, the DOJ, and the United States (collectively, "Defendants") argue that this Court lacks jurisdiction and that Morris & Dickson's claims are unripe. [Record Document 24 at 7–19]. They believe that Supreme Court precedent requires Morris & Dickson to complete the administrative process and obtain a final order from the DEA Administrator before pursuing its constitutional claims in an appeals court. [*Id.* at 9–14]. Morris & Dickson contends that this Court has jurisdiction to enjoin unconstitutional administrative proceedings at any time and that, if this Court declines to exercise jurisdiction, Morris & Dickson will face the irreparable harm of forced participation in such a proceeding. [Record Document 26 at 2–8].

## II.     Law and Analysis

"Federal courts are courts of limited jurisdiction . . . ." *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006)). As a result, they have a "duty to continually, and *sua sponte*, assess their jurisdiction." *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 284 (5th Cir. 2011). Thus, this Court must determine whether it has subject matter jurisdiction over Morris & Dickson's constitutional claims, which have been raised in response to the ongoing administrative adjudication before Judge Dorman.

### A.     The Statutory Scheme

The CSA grants the DEA the authority to regulate, among other things, the distribution of controlled substances "with the goal of creating a closed system of distribution." *Keysource Med. Inc. v. Holder*, No. 1:11-cv-393, 2011 WL 3608097, at *1 (S.D. Ohio Aug. 16, 2011). Companies that distribute controlled substances, such as Morris & Dickson, must annually obtain a DEA registration. 21 U.S.C. § 822(a)(1); 21 C.F.R. § 1301.11(a). When evaluating a distributor's application, the DEA considers whether the registration is "inconsistent with the public interest" in light of the following factors:

> (1) maintenance of effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels;
> (2) compliance with applicable State and local law;
> (3) prior conviction record of applicant under Federal or State laws relating to the manufacture, distribution, or dispensing of such substances;
> (4) past experience in the distribution of controlled substances; and
> (5) such other factors as may be relevant to and consistent with the public health and safety.

21 U.S.C. § 823(b). In order to reduce the risk of diversion, a distributor

shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.

21 C.F.R. § 1301.74(b).

The DEA Administrator may suspend or revoke a license on various grounds, including a "finding that the registrant . . . has committed such acts as would render his registration under section 823 of this title inconsistent with the public interest as determined under such section." 21 U.S.C. § 824(a)(4). Before revoking a registration, the DEA must issue a rule to show cause describing the grounds for revocation and conduct a hearing in accordance with the APA. *Id.* § 824(c); 21 C.F.R. § 1301.37(c). Following the hearing, the presiding ALJ issues a report recommending findings of fact and conclusions of law; the ALJ forwards this report and the administrative record to the DEA Administrator. *Id.* § 1316.65(a),(c). The Administrator, as the Attorney General's delegate, then issues a final order, supported by findings of fact and conclusions of law. *Id.* § 1316.67. A party "aggrieved by a final decision" of the DEA Administrator may then appeal to the Court of Appeals for the District of Columbia Circuit or for the circuit in which the party's principal place of business is located. 21 U.S.C. § 877.

**B.    The Legal Framework**

Although district courts typically have jurisdiction over all questions arising under the Constitution, 28 U.S.C. § 1331, Congress may impliedly preclude that jurisdiction and route review of agency actions through other courts, *see, e.g.*, *Thunder Basin Coal Co. v. Reich*, 510 U.S.

200, 207 (1994). To determine whether jurisdiction is impliedly precluded, a court must first ask whether congressional intent to preclude jurisdiction is "fairly discernable" from the text, structure, and purpose of the statute establishing the agency review scheme. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012) (citing *Thunder Basin*, 510 U.S. at 207; *United States v. Fausto*, 484 U.S. 439, 443 (1988), *superseded by statute on other grounds*, Civil Service Due Process Amendments, Pub. L. No. 101-376, 104 Stat. 461 (1990)). If so, the court must turn to a second question: are "the claims at issue ' . . . of the type Congress intended to be reviewed within th[e] statutory structure?'" *Free Enter. Fund*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 212). To answer this question, a court must apply the *Thunder Basin* factors: (1) whether "a finding of preclusion could foreclose all meaningful judicial review;" (2) whether the claims are "wholly 'collateral' to a statute's review provisions;" and (3) whether the claims fall "outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212–13.

This framework evolved through three Supreme Court decisions. As these decisions will control this Court's determination of its own jurisdiction, a somewhat detailed presentation of them is required. In the first, *Thunder Basin Coal Co. v. Reich*, miners at a non-union mine selected two non-employee union organizers to serve as their representatives during mine inspections. *Id.* at 204. Federal regulations require a mine operator to post information identifying the employees' representatives. *Id.* Thunder Basin argued to the Mine Safety and Health Administration ("MSHA") that the miners' selection violated the company's right under the National Labor Relations Act ("NLRA") to exclude union organizers from company property. *Id.* at 204–05. Thunder Basin further contended

that requiring it to post the representatives' information would deny due process by forcing the company to choose between violating the Mine Act and incurring penalties or complying with the act and suffering irreparable harm. *Id.* The MSHA responded with a letter instructing Thunder Basin to post the required information. *Id.* at 204. Before receiving the letter, the company filed suit in district court seeking to enjoin any enforcement actions by the Secretary of Labor. *Id.* at 205.

The Supreme Court held that the district court lacked jurisdiction over this challenge to a prospective agency determination. *Id.* at 216. A mine operator who objects to sanctions imposed by the Secretary of Labor for violations of the Mine Act may seek review before the Mine Safety and Health Review Commission ("Commission"), an independent agency, and then, if still aggrieved, before a court of appeals. *Id.* at 204 (citing 30 U.S.C. §§ 815–816, 823). The Court first concluded that the structure and legislative history of the Mine Act indicate congressional intent to channel review of all violations of the Mine Act through the Commission and the appeals courts. *Id.* at 208–09. In the Court's view, it was particularly significant that Congress created two exceptions to the statutory review process, both of which allow the Secretary (but not an aggrieved operator) to seek an injunction in district court. *Id.* at 209. The Court then held that Thunder Basin's statutory and constitutional claims could both receive meaningful judicial review. *Id.* at 213–215. Although the Commission has no particular expertise in applying the NLRA, the Court concluded that the Commission's familiarity with mine operations could helpfully inform any decision regarding the application of the NLRA. *Id.* at 214–15. When considering the due process challenge, the

Court held that the availability of review in the appeals court was sufficiently meaningful, distinguishing this situation from the one that would arise if Congress purported to preclude all judicial review of a constitutional claim. *Id.* at 215 & n.20 (citing *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975)).

Sixteen years later, the Supreme Court revisited this jurisdictional issue in *Free Enterprise Fund v. Public Company Accounting Oversight Board.* 561 U.S. 477. Before deciding whether statutes providing officers with multiple layers of protection against removal at will were constitutional, the Court determined that the district court had jurisdiction to address that question. *Id.* at 491. [3] The Sarbanes-Oxley Act established the Public Company Accounting Oversight Board ("PCAOB") under the authority of the Securities and Exchange Commission ("SEC"). *Id.* at 484 (citing Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002)). The PCAOB acts as a typical agency, issuing rules the violation of which can be criminally prosecuted as violations of the Securities Exchange Act and engaging in enforcement proceedings, which can lead to very significant monetary and professional sanctions. *Id.* at 485. A party aggrieved by a new rule or by a disciplinary sanction may appeal to the SEC and thence to a court of appeals. *Id.* at 489 (citing 15 U.S.C. § 78y).

Following a PCAOB report critical of its accounting practices, an accounting firm, in conjunction with the Free Enterprise Fund, filed suit in district court challenging the

---

[3] Although the majority opinion drew a strong dissent, the dissent did not mention jurisdiction, thus implicitly endorsing the majority's view. *See Free Enter. Fund*, 561 U.S. at 514-49 (Breyer, J., dissenting).

constitutionality of the removal protections for PCAOB members. *Id.* at 487. The Supreme Court applied the *Thunder Basin* factors to find that the district court had jurisdiction over this challenge. *Id.* at 491. The Court noted that there are only two ways in which the petitioners could have obtained judicial review of the PCAOB's structure. *Id.* at 490. They could have waited until the PCAOB announced a new rule and then challenged that rule before the SEC. *Id.* The alternate approach would have been to deliberately violate a PCAOB rule or order and incur a sanction. *Id.* In either case, if the SEC affirmed the PCAOB, there would then be a judicial forum for the constitutional challenge. *See id.* at 489. Because not every PCAOB action gives rise to an SEC order that can then be challenged in an Article III court, the necessity of these peculiar procedures to generate the preconditions for judicial review meant that review was not "meaningful." *Id.* at 490–91. The Court also suggested, without any discussion, that the "general challenge" to the PCAOB's "existence" was "'collateral' to any [SEC] orders or rules from which review might be sought." *Id.* at 490. Finally, the Court distinguished *Thunder Basin* by noting that the mine operator's complaints were primarily statutory and thus provided an opportunity for the agency to deploy its expertise, something lacking in the "standard questions of administrative law" raised by the petitioners. *Id.* at 491.

Two years later, the Court reached the opposite conclusion in *Elgin v. Department of Treasury*. 567 U.S. 1. In that case, several federal employees were terminated or (allegedly) constructively discharged for failing to register for selective service in violation of the Civil Service Reform Act ("CSRA"). *Id.* at 7 (citing 5 U.S.C. § 3328). Seeking reinstatement and backpay, they filed suit in district court, where they alleged that the selective-service

requirement violated the Equal Protection Clause and constituted a bill of attainder. *Id.*

The Supreme Court held that the CSRA stripped the district court's jurisdiction to consider the petitioners' constitutional challenges. *Id.* at 23. Under the CSRA, most federal employees who suffer an adverse employment action must proceed before the Merit Systems Protection Board ("MSPB"). *Id.* at 6 (citing 5 U.S.C. §§ 7513(d), 7701(a)). If dissatisfied at that stage, employees may appeal to the Federal Circuit. *Id.* (citing 5 U.S.C. § 7703(b)(1)(A); 28 U.S.C. § 1295(a)(9)). The Court concluded that it was fairly discernable from the "painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions" that Congress intended to preclude district court review. *Id.* at 11–12. The Court also noted that the CSRA specifically exempted claims that an adverse employment action violated certain antidiscrimination statutes. *Id.* at 13 (citing 5 U.S.C. §§ 7702(a)(1), 7703(b)(2)). Following an unfavorable MSPB decision, these claims may be raised in district court rather than in the Federal Circuit. *Id.* (citing 5 U.S.C. §§ 7702(a)(1), 7703(b)(2)). This provision "demonstrates that Congress knew how to provide alternative forums for judicial review based on the nature of an employee's claim" such that the absence of an exception for constitutional claims indicated congressional intent to preclude jurisdiction. *Id.* According to the Court, the CSRA was to create an "'integrated scheme of administrative and judicial review,'" a purpose that would be "seriously undermined" by allowing challenges framed in constitutional terms to be reviewed in district court while statutory challenges remained before the MSPB. *Id.* at 13–14 (quoting *Fausto*, 484 U.S. at 445).

Turning to the *Thunder Basin* factors, the Court held that the mere fact that judicial review of the constitutional questions would be delayed until the matter was appealed to the Federal Circuit did not render that review unmeaningful. *Id.* at 17.[4] The Court further determined that the constitutional claims were not "wholly collateral" to the statutory review scheme because the relief sought (reemployment) was the same relief available under the CSRA. *Id.* at 22. In the Court's view, the petitioners' constitutional claims were merely the "vehicle by which they s[ought] to reverse the removal decisions [and] to return to federal employment." *Id.* Finally, the Court proposed multiple ways in which the MSPB might bring its expertise to bear on threshold questions that "may obviate the need to address the constitutional challenge": (1) by deciding that a particular employee was not constructively discharged; (2) by interpreting the CSRA provision at issue to "alleviate constitutional concerns;" or (3) by ruling in the employees' favor on alternate statutory grounds. *Id.* at 22–23.

### C.   <u>Analysis</u>

#### 1.   **"Fairly Discernable" Intent to Preclude District Court Jurisdiction**

Under § 877 of the CSA, a "final decision" of the DEA Administrator is reviewable in the appropriate court of appeals. 21 U.S.C. § 877. On review, the agency's findings are fact are conclusive unless unsupported by substantial evidence. *Id.* When a path to Article III review is laid out in detail, it is fairly discernable that Congress did not intend to allow

---

[4] The Court declined to decide whether the MSPB was correct in its determination that it lacked the authority to decide whether the selective-service provision of the CSRA was unconstitutional. *Elgin*, 567 U.S. at 17.

regulated entities access to immediate review in district court. *Elgin*, 567 U.S. at 11–12. Although the CSA is less "painstaking[ly] detail[ed]" than the CSRA, *id.* at 11, the CSA nevertheless reflects an intent to force claims related to DEA registrations to proceed through an administrative process before judicial review begins in an appeals court, *see, e.g.*, *John Doe, Inc. v. DEA*, 484 F.3d 561, 569 (D.C. Cir. 2007) ("21 U.S.C. § 877's exclusive jurisdiction provision is . . . broad[] . . . ."). The deference to the DEA Administrator's findings of fact reinforces this Court's view of that intent. *See* 21 U.S.C. § 877. After all, there are only facts to which a court can defer if the DEA Administrator has already issued a final ruling.[5] The CSA also contains a provision for district court review of civil penalties for drug possession. *Id.* § 844a(g). As in *Thunder Basin*, 510 U.S. at 209, and *Elgin*, 567 U.S. at 13, the absence of a similar provision covering Morris & Dickson's separation-of-powers claims indicates Congress's intent that such claims be heard by an appeals court following the conclusion of agency proceedings.

Morris & Dickson's counterargument is based on the language of § 877, which directs that review of "[a]ll final determinations, findings, and conclusions of the Attorney General under this subchapter" be undertaken by the appeals courts. 21 U.S.C. § 877 (emphasis added). In Morris & Dickson's view, this language indicates congressional intent to channel only those claims related to the interpretation and application of the CSA, not other types of claims such as their appointment and removal challenges. [Record Document 32 at 15–16].

---

[5] Although the Supreme Court has held that the degree of deference is irrelevant to an Appointments Clause analysis, *Lucia*, 138 S. Ct. at 2054 (citing *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991)), it did not deem deference irrelevant to a jurisdictional analysis.

However, Morris & Dickson's proposed reading is inconsistent with that adopted for analogous provisions in other statutes, such as the Securities Exchange Act. *See, e.g.*, *Hill v. SEC*, 825 F.3d 1236, 1244 (11th Cir. 2016). That act provides for judicial review in the appeals courts of "final order[s] of the Commission entered <u>pursuant to</u> this chapter," 15 U.S.C. § 78y (emphasis added), while the CSA authorizes such review of "[a]ll final determinations . . . of the Attorney General <u>under</u> this subchapter," 21 U.S.C. § 877 (emphasis added). The operative terms differ in the two statutes ("pursuant to" versus "under"), but Black's Law Dictionary defines "pursuant to" as "under." *Pursuant to*, Black's Law Dictionary (10th ed. 2014). It follows that a more likely explanation than a congressional intent for the provisions to have different meanings is that the language of the CSA (enacted in 1970) reflects the shift away from the legalese common when the Securities Exchange Act was drafted in 1934. As a result, this Court concludes that § 78y and § 877 should have the same effect on district court jurisdiction.

While *Free Enterprise Fund* reveals that § 78y does not preclude district court jurisdiction in all cases, the Supreme Court reached that conclusion based on the *Thunder Basin* factors rather than on the question of fairly discernable intent. *See* 561 U.S. at 491. Following that decision, every court of appeals to consider § 78y has held that it is fairly discernable that Congress "inten[ded] to channel all objections to a final Commission order—<u>including challenges to the constitutionality of the SEC ALJs or the administrative process itself</u>—into the administrative forum and to preclude parallel federal district court litigation." *Hill*, 825 F.3d at 1252 (emphasis added); *see Bennett v. SEC*, 844 F.3d 174, 182 (4th

Cir. 2016); *Tilton v. SEC*, 824 F.3d 276, 282 (2d Cir. 2016); *Bebo v. SEC*, 799 F.3d 765, 767

(7th Cir. 2015); *see also Jarkesy v. SEC*, 803 F.3d 9, 16 (D.C. Cir. 2015) ("We can fairly discern

Congress's intent to preclude suits by respondents in SEC administrative proceedings in the

mine-run of cases.").[6] Although this authority does not bind this Court, the unanimity of

these courts renders their holdings strongly persuasive. This Court thus rejects Morris &

Dickson's argument that the phrase "under this subchapter" confines the statutory review

procedure to questions regarding the application of the CSA. Instead, this Court concludes

that it is fairly discernable that § 877, the provision of the CSA analogous to § 78y,

demonstrates Congress's intent to channel review of claims raised by parties to DEA

enforcement proceedings through the agency and then to the courts of appeals.

### 2. *Thunder Basin* Factors

The question this Court must now answer is whether the intent to preclude

jurisdiction extends to Morris & Dickson's separation-of-powers claims. To do so, this Court

must ask "if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit

is 'wholly "collateral" to a statute's review provisions'; and if the claims are 'outside the

agency's expertise.'" *Free Enter. Fund*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at

212–13).

---

[6] Morris & Dickson points out that these cases precede *Lucia v. SEC*, in which the Supreme Court held that the process by which SEC ALJs were appointed was unconstitutional. 138 S. Ct. 2044. However, *Lucia* did not address the jurisdictional issue presented here because Lucia pressed his case before an ALJ, on appeal to the SEC, and thence to the D.C. Circuit. *Id.* at 2050.

### a. "Meaningful Judicial Review" Factor

The first *Thunder Basin* factor—whether review by means of the established statutory procedure will be "meaningful judicial review"—is the most significant of the three. *See Free Enter. Fund*, 561 U.S. at 490–91; *see also Tilton*, 824 F.2d at 282 (holding that when this factor "weighs strongly against district court jurisdiction," "closer questions" on the other factors are insufficient to give rise to district court jurisdiction). If this Court lacks jurisdiction, then Morris & Dickson will be compelled to defend its conduct before Judge Dorman who will make a recommendation to the DEA Administrator. *See* 21 U.S.C. § 824(c); 21 C.F.R. § 1316.65(a),(c).[7] If the Administrator finds against Morris & Dickson, the company may then appeal to the D.C. Circuit or to the Fifth Circuit. *See* 21 U.S.C. § 877. As a result, even if Judge Dorman declines to address the constitutional questions,[8] they will be decided on appellate review.

Morris & Dickson admits that its constitutional claims will eventually be considered by an Article III court if the DEA issues a sanction. [Record Document 32 at 12]. Nevertheless, Morris & Dickson insists that this review will not be meaningful because no remedy can restore the time, energy, and expense required to participate in the allegedly unconstitutional proceeding before Judge Dorman. [Record Documents 2-1 at 14, 26 at 4,

---

[7] Currently, the DEA has only an Acting Administrator, Uttam Dhillon. [Record Document 1 at 5].

[8] Judge Dorman is unlikely to rule on Morris & Dickson's separation-of-powers claims because he believes that he "is not in a position to rule on the constitutionality of [his] appointment as an ALJ or on any other matter raised in Respondent's District Court motions." [Record Document 22 at 3].

and 32 at 12–13]. Even if Morris & Dickson is correct regarding the available suite of remedies, the weight of authority counsels against finding that unrecoverable expenditures of time and money make appellate review of constitutional claims unmeaningful.

When the Supreme Court announced meaningful judicial review as a factor in *Thunder Basin*, its concern was that preclusion of "<u>all</u> judicial review of a constitutional claim" would "present [a] 'serious constitutional question.'" 510 U.S. at 215 n.20 (emphasis added) (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986), *superseded by statute on other grounds*, Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874 (1986)). Here, of course, judicial review is merely delayed; it is not barred altogether.

In *FTC v. Standard Oil Co. of California*, the Supreme Court specifically addressed the cost of participation in an administrative adjudication:

> [W]e do not doubt that the burden of defending this proceeding will be substantial. But the expense and annoyance of litigation is part of the social burden of living under government. As we recently reiterated: mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.

449 U.S. 232, 244 (1980) (internal citations and quotation marks omitted). Although Standard Oil's claim was a statutory one (i.e., that the agency lacked the required "reason to believe" that the company was violating the law), *id.* at 234–35, multiple appeals courts have found that *Standard Oil*'s principle extends to separation-of-powers challenges to agency structure, *see Hill*, 825 F.3d at 1245–46; *Tilton*, 824 F.3d at 285–86; *Bebo*, 799 F.3d at 775. For these courts, the ability of an appellate court to vacate an agency's judgment and remand for a new

hearing, "although imperfect, suffices to vindicate the litigant's constitutional claim." *Tilton*, 824 F.3d at 285 (citing *German v. Conn. Nat'l Bank*, 930 F.2d 1038, 1040 (2d Cir. 1991)); *see Hill*, 825 F.3d at 1245–47; *Bebo*, 799 F.3d at 774–75. The Fifth Circuit has reached a similar conclusion in the ripeness context: "[w]e do not believe that the burden of participating in the proceeding before the ALJ is sufficient to constitute . . . irreparable harm . . . ." *Pennzoil Co. v. FERC*, 742 F.2d 242, 245 (5th Cir. 1984) (citing *Standard Oil*, 449 U.S. at 244; *Petroleum Exploration, Inc. v. Public Serv. Comm'n*, 304 U.S. 209, 222–23 (1938)). Based on this authority, this Court is persuaded that judicial review of Morris & Dickson's constitutional claims following the conclusion of the DEA's adjudication will be meaningful.

Policy decisions made throughout the federal system support this Court's reasoning. Federal courts regularly deprive litigants of immediate review of constitutional questions. *See Tilton*, 824 F.3d at 285 (collecting cases). For instance, a court has jurisdiction over a defendant's person only if the exercise of jurisdiction complies with the mandates of the Due Process Clause. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Nevertheless, if a defendant loses her challenge to the court's jurisdiction, she must undergo the expense, inconvenience, and stress of being a party to litigation in district court before her due process claim can be reviewed on appeal. *See Van Cauvenberghe v. Biard*, 486 U.S. 517, 526–27 (1988) (citing *Catlin v. United States*, 324 U.S. 229, 236 (1945), *superseded by statute on other grounds*, Act of November 16, 1988, Pub. L. No. 100-669, 102 Stat. 3969)) ("[T]he denial of a claim of lack of jurisdiction is not an immediately appealable collateral order."). Similarly, as the D.C. Circuit has pointed out,

criminal defendants must generally face trial when a pretrial motion, even one raised on constitutional grounds, is denied. *Jarkesy*, 803 F.3d at 26 (citing *Deaver v. Seymour*, 822 F.2d 66, 70 (D.C. Cir. 1987); 6 Wayne R. LaFave et al., *Criminal Procedure* § 27.2(b) (3d ed. 2007)). These examples demonstrate that post hoc review can be meaningful even if the only remedy is vacature of the decision of a tribunal that lacked the constitutional authority to adjudicate a matter. This Court does not believe that Morris and Dickson's separation-of-powers challenges to Judge Dorman's authority require a different approach.

Morris & Dickson raises two main counterarguments. The first relies on last term's decision in *Lucia v. SEC*. 138 S. Ct. 2044. In *Lucia*, the Supreme Court held that SEC ALJs are "officers of the United States" to whom the Appointments Clause applies. *Id.* at 2055. Believing that *Lucia* indicates that Judge Dorman was unconstitutionally appointed, Morris & Dickson insists that it will necessarily prevail on the merits of its challenge. [Record Document 32 at 19]. If that is true, Morris & Dickson then argues, requiring it to proceed before Judge Dorman is futile as any decision he makes will be vacated by the appeals court and the matter remanded for a new proceeding before a new ALJ. [Record Document 35 at 5]. By pointing to the strength of its merits claim, Morris & Dickson conflates the standards for injunctive relief with the standards for establishing jurisdiction. A likelihood of success on the merits is an element of the former but not of the latter. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). In effect, Morris & Dickson asks this Court to hold that it has jurisdiction over a constitutional

challenge to a statutory review scheme that channels review from an agency to an appeals court if the challenger's constitutional argument is certainly correct.[9]

In support of its argument that *Lucia* is relevant to this Court's jurisdiction, Morris & Dickson points to *Leedom v. Kyne* in which the Supreme Court considered whether a district court had jurisdiction to vacate an order of the National Labor Relations Board ("NLRB"). 358 U.S. 184 (1958). The NLRA provides that a bargaining unit may be composed of a mix of professional and nonprofessional workers only if a majority of the professionals vote in favor of the nonprofessionals' inclusion. 29 U.S.C. § 159(b)(1). The NLRB certified such a mixed bargaining unit without taking the required vote. *Kyne*, 358 U.S. at 186. Because the NRLB's order was "made in excess of [the NLRB's] delegated powers and contrary to a specific prohibition" in the NLRA, the Supreme Court found that the district court had jurisdiction to vacate the order. *Id.* at 188, 191. Under *Kyne*, "agency action 'contrary to a specific mandate of . . . [an] Act [of Congress],' is remediable judicially before administrative proceedings are at an end . . . ." *Coca-Cola Co. v. FTC*, 475 F.2d 299, 303 (5th Cir. 1973) (quoting *Templeton v. Dixie Color Printing Co.*, 444 F.2d 1064, 1069 (5th Cir. 1971)); *see also Energy Transfer Partners, LP v. FERC*, 567 F.3d 134, 143 (5th Cir. 2009) (refusing to apply the *Kyne* rule when the court "can discern no plain statutory mandate").

Morris & Dickson believes that the CSA (through its reference to the APA, which in turn incorporates the statutory procedures for appointing and removing ALJs) violates the

---

[9] This Court reaches no conclusion on the constitutionality of Judge Dorman's appointment.

Constitution by allowing DEA ALJs to be improperly appointed and shielded from removal. [Record Document 1 at 14, 16]. Morris & Dickson does not contend that the DEA has violated the CSA. Thus, its complaint is not that an agency is violating an act of Congress (the situation in *Kyne*) but rather that Congress, by enacting the CSA and the APA, has violated Article II. In contrast to the explicit instruction in the NLRA, the textual bases of Morris & Dickson's constitutional arguments are hardly "plain statutory mandate[s]." *Energy Transfer Partners*, 567 F.3d at 143. The Appointments Clause reads:

> [H]e shall nominate, and by and with the advice and consent of the Senate, shall appoint . . . all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The textual basis of Morris & Dickson's removal-power challenge is even less specific: "he shall take Care that the Laws be faithfully executed." *Id.* art. II, § 3. While it is true that the Supreme Court has fleshed out the meaning of these underdetermined clauses, *see, e.g.*, *Lucia*, 138 S. Ct. at 2051–55, nothing about *Kyne* suggests that district court jurisdiction may arise from a violation of open-ended constitutional provisions as interpreted by the Supreme Court. Without the *Kyne* exception, there is no reason to conclude that any strength of Morris & Dickson's Appointment Clause challenge (on the basis of *Lucia*) alters the question of jurisdiction.

Morris & Dickson's second counterargument is that *Free Enterprise Fund* is "on all fours." [Record Document 32 at 9]. In Morris & Dickson's view, *Free Enterprise Fund* stands for the proposition that district courts have jurisdiction over any separation-of-powers

challenge to agency structure. [*Id.* at 10]. Although the *Free Enterprise Fund* Court did conclude that jurisdiction existed for a pre-enforcement challenge to agency structure, it did not state that jurisdiction existed simply because the petitioners raised separation-of-powers arguments. *See* 561 U.S. at 489–91. Rather, the Court instructed lower courts to ask whether the statutory scheme effectively requires a plaintiff to manufacture an avenue for review by, for instance, deliberately incurring a sanction. *Id.* at 490. In *Free Enterprise Fund*, an enforcement proceeding against the accounting firm had not begun, and there was no guarantee that the PCAOB's investigation would lead to a reviewable SEC order. *Id.* at 487, 490. In contrast, here it is certain that the proceeding before Judge Dorman will lead to a recommendation that the DEA Administrator will accept or modify when making his order; this order will be reviewable in the D.C. Circuit or the Fifth Circuit. Morris & Dickson need only wait for this review to occur. As the Fourth Circuit held when distinguishing *Free Enterprise Fund*, one who is "already embroiled in an enforcement proceeding" faces no <u>additional</u> risk by waiting to have a constitutional claim adjudicated at the end of the agency proceeding.[10] *Bennett*, 844 F.3d at 186. Therefore, assuming that the administrative process

---

[10] The risk faced by the plaintiff also distinguishes *Monson v. DEA*, 589 F.3d 952 (8th Cir. 2009), which Morris & Dickson argues supports its contention that a facial challenge to an agency's authority lies within a district court's jurisdiction. [Record Document 26 at 4]. Morris & Dickson is correct that *Monson* holds that a "district court could consider whether plaintiffs' activities fell with the DEA's jurisdiction at all." [*Id.*]. In *Monson*, two North Dakota farmers wished to grow industrial hemp as authorized by state law and sought a declaratory judgment that the CSA does not apply to that activity and so they could not be criminally prosecuted. 589 F.3d at 960. Because there were no ongoing enforcement proceedings, there was no prospect of judicial review unless the district court exercised jurisdiction. *See id.* at 961. Although the Eighth Circuit does not say so explicitly, it follows from that court's argument that the farmers could have provoked enforcement by planting the hemp and

does not terminate in Morris & Dickson's favor,[11] the company will receive Article III review of its constitutional claims. Because the DEA began the revocation process in response to Morris & Dickson's past conduct, continued participation in the enforcement proceeding results from risks that the company assumed before the proceeding started; Morris & Dickson need assume no new risks in order to guarantee judicial review. This Court thus rejects Morris & Dickson's overly broad reading of *Free Enterprise Fund*.

When interpreting the provision of the Securities Exchange Act that is analogous to § 877 of the CSA, the Second, Fourth, Seventh, and Eleventh Circuits have held that meaningful review of separation-of-powers challenges can be had in an appeals court following agency adjudication. *Bennett*, 844 F.3d at 186; *Hill*, 825 F.3d at 1250; *Tilton*, 824 F.3d at 286; *Bebo*, 799 F.3d at 773. Such review in this case might not restore resources spent defending against the enforcement action. But no authority holds that that expenditures of time and money suffice to make post-agency review unmeaningful. Morris & Dickson's separation-of-powers challenges will have their day in court without the need for Morris & Dickson to do anything other than participate in the show-cause hearing before Judge Dorman. As a result, the Court concludes that Morris & Dickson will receive meaningful review of its constitutional claims at the appropriate time.

---

risking criminal sanctions; it was this possible procedure that the Supreme Court later rejected in *Free Enterprise Fund*. 561 U.S. at 490-91.

[11] The Supreme Court discussed the possibility of a substantive agency verdict in favor of the regulated person as an aspect of the application of agency expertise. *See Elgin*, 567 U.S. at 22-23. To the extent that the DEA might rule in Morris & Dickson's favor, this would render judicial review unnecessary, but this Court sees no reason to conclude that that

### b. "Wholly Collateral" Factor

This Court will now consider whether Morris & Dickson's challenges to Judge Dorman's appointment and to his removal protections are "wholly collateral" to the ongoing proceeding to revoke Morris & Dickson's DEA registration. *Elgin*, 567 U.S. at 21. The meaning of this factor is "not free from ambiguity." *Bennett*, 844 F.3d at 186. Because a claim is collateral where it is "accompanying, but secondary and subordinate to" another claim, the separation-of-powers and CSA claims are clearly collateral to one another. *Collateral*, Black's Law Dictionary (10th ed. 2014). However, the Supreme Court requires that claims to be exempted from the statutory review procedure be "'wholly collateral to a statute's <u>review provisions</u>'"—in other words, to an agency's adjudicative process itself. *Elgin*, 567 U.S. at 16 (emphasis added) (quoting *Free Enter. Fund*, 561 U.S. at 489).

Unfortunately, the Supreme Court has not provided a test by which to discriminate between claims that are collateral to a process and those that are wholly collateral. The closest the Court has come is a suggestion in *Elgin* that a claim is not wholly collateral to a statutory review proceeding if the relief sought under the constitutional claim is the same as that provided by the agency when reviewing statutory claims. *Id.* at 22. Thus, because the petitioners in *Elgin* sought reinstatement and backpay and because the MSPB "routinely affords" that same relief, the constitutional claims were not wholly collateral to the administrative process. *Id.* If Morris & Dickson successfully defends its registrations, its relief will be the end of administrative enforcement. Rather than dismissal of the revocation

---

result says anything about the meaningfulness of review that does occur.

proceeding, the instant suits seeks to delay that proceeding via "[a]n order and judgment enjoining DEA and DOJ from carrying out an administrative proceeding against Morris & Dickson . . . unless and until a constitutionally valid system is in place." [Record Document 1 at 18 (emphasis added)].

While a delay is distinguishable from a dismissal, this appears to be a distinction without a difference. For instance, when considering an Appointments Clause challenge to an ongoing administrative proceeding, the Second Circuit characterized the challenger's claim as not wholly collateral even though it "sound[ed] in administrative procedure rather than statutory construction." *Tilton*, 824 F.3d at 288. At the time that the court reached this conclusion, it was established that the remedy for a plaintiff bringing an Appointments Clause challenge is a new hearing before a constitutionally appointed officer. *See Ryder v. United States*, 515 U.S. 177, 188 (1995) ("Petitioner is entitled to a hearing before a properly appointed panel . . . ."). Nevertheless, the Second Circuit cited *Elgin* for the proposition that a "claim is not wholly collateral if it serves as the 'vehicle by which' a party seeks to prevail in an administrative proceeding." *Tilton*, 824 F.3d at 287 (emphasis added) (quoting *Elgin*, 567 U.S. at 22). Without even acknowledging the difference in remedy, the Second Circuit found the Appointments Clause challenge to be not wholly collateral to the SEC enforcement action because the constitutional claims "target[ed] an aspect of an ongoing administrative proceeding." *See Tilton*, 824 F.3d at 288–89 (emphasis added). Thus, this Court is persuaded that a distinction between delaying that re-routes the case to a new ALJ and prevailing such that enforcement ends is not materially significant.

Given the paucity of analysis from the Supreme Court, lower courts have developed two different approaches. *See id.* at 287. Some find a constitutional claim wholly collateral when it is unconnected to the merits of the underlying dispute. *See id.* (citing *Hill v. SEC*, 114 F. Supp. 3d 1297, 1309 (N.D. Ga. 2015), *vacated and remanded*, 825 F.3d 1236; *Duka v. U.S. SEC*, 103 F. Supp. 3d 382, 391 (S.D.N.Y. 2015), *abrogated by Tilton*, 824 F.3d 276)). Others find that a claim is wholly collateral only where it is also procedurally disconnected from an ongoing administrative adjudication. *See id.* (citing *Jarkesy*, 803 F.3d at 23; *Bebo v. SEC*, No. 15-C-3, 2015 WL 905349, at *2–4 (E.D. Wis. Mar. 3, 2015)*, aff'd*, 799 F.3d 765). This Court believes that the former approach improperly ignores the modifier "wholly." When raised in response to ongoing administrative proceedings, separation-of-powers claims are always disconnected from the merits and so, under the first approach, would always be "wholly collateral." However, the Supreme Court did not instruct lower courts to ask whether the constitutional claim is collateral to the statutory claim, but rather whether the constitutional claim is collateral "to a statute's review provisions." *Elgin*, 567 U.S. at 15 (quoting *Free Enter. Fund*, 561 U.S. at 489). As the first interpretation would deprive the word "wholly" of any meaning and improperly compare the constitutional claims to other claims rather than to the review process itself, this Court declines to follow those courts that have taken this position.

Instead, this Court holds that claims which arise prior to or separately from an agency adjudication are wholly collateral while those arising within and in response to that adjudication are not wholly collateral. *See Bennett*, 844 F.3d at 187; *Jarkesy*, 803 F.3d at 23. Essentially, Morris & Dickson asks this Court to craft an exception for constitutional

challenges to agency structure. This argument is not without some force. Other courts to have considered claims that an agency's adjudicative process violates structural guarantees in the Constitution (as opposed to other sorts of constitutional rights) have found that it is a close question whether those claims are wholly collateral to the administrative adjudication. *See Hill*, 825 F.3d at 1251; *Bebo*, 799 F.3d at 774.[12] Nevertheless, this Court believes that resting jurisdiction on the distinction between specific types of constitutional claims is problematic. *See Jarkesy*, 803 F.3d at 24–25 (citing *Elgin*, 561 U.S. at 15). The Supreme Court has refused to hinge subject matter jurisdiction on the distinction between facial and as-applied claims, *Elgin*, 567 U.S. at 15 (citing *Citizens United v. FEC*, 558 U.S. 310, 331 (2010)), and has also noted the absence of authority for the proposition that an "Appointments Clause or separation-of-powers claim should be treated differently than every other constitutional claim," *Free Enter. Fund*, 561 U.S. at 491 n.2. While this latter observation did not address jurisdiction but rather the existence of an implied right of action, *see id.*, it does suggest that the Supreme Court may be disinclined to differentiate various types of constitutional claims in procedural contexts.

The requirement that certain claims be raised in agency adjudications before Article III courts get involved is "fundamental to administrative law." *Bebo*, 799 F.3d at 775. As the Fourth Circuit has aptly observed, excepting a subset of constitutional claims "would provide no limiting principle: Anyone could bypass the judicial review scheme established by

---

[12] Even in these cases the courts have still concluded that the district courts lacked jurisdiction. *See Hill*, 825 F.3d at 1252; *Bebo*, 799 F.3d at 775.

Congress simply by alleging a constitutional challenge and framing it as 'structural,' 'prophylactic,' or 'preventative.'" *Bennett*, 844 F.3d at 188. Litigants with sufficiently creative counsel could thus postpone inconvenient participation in an administrative process by running to district court armed with a "constitutional" objection.[13] Even if the objection were frivolous, it would effectively derail the administrative process for the time required for judicial review of the constitutional claim; in this district and circuit that review currently takes an average of twenty-one months.[14] If such delays became common, Congress could no longer rely on agencies to do what it created them to do—enforce Acts of Congress.

This Court agrees that the question of whether Morris & Dickson's separation-of-powers claims are wholly collateral to the registration-revocation proceeding is somewhat close. *See Hill*, 825 F.3d at 1251; *Bebo*, 799 F.3d at 774. Nevertheless, in light of the policy problem created by crafting a "constitutional claim" exception to Congress's ability to channel initial review through agencies, the Court finds that Morris & Dickson's separation-of-powers claims are not "wholly collateral" to the proceeding before Judge

---

[13] *Cf. Jarkesy*, 803 F.3d at 25 ("Yet an exception to an otherwise exclusive scheme for constitutional challenges in general, or facial attacks on a statute in particular, or some other as-yet-undefined category of constitutional claims, would encourage respondents in administrative enforcement proceedings to frame their challenges to the Commission's actions in those terms and thereby earn access to another forum in which to advance their arguments. We doubt Congress intended that result.").

[14] This statement is based on the average time to disposition for the year ending September 30, 2018. *Comparison of Districts Within the Fifth Circuit*, U.S. Cts. 5 http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2018.pdf (last visited December 20, 2018); *Federal Court Management Statistics–Profiles*, U.S. Cts. 14, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile0930.2018.pdf (last visited December 20, 2018).

Dorman because they were raised in an attempt to delay or defeat administrative enforcement of the CSA.

### c. "Agency Expertise" Factor

The final *Thunder Basin* factor requires this Court to consider whether Morris & Dickson's separation-of-powers claims are outside of the DEA's expertise. *See Elgin*, 567 U.S. at 15 (quoting *Free Enter. Fund*, 561 U.S. at 489). There is a tension between *Free Enterprise Fund* and *Elgin* in this regard. In the former case, the Supreme Court held that agency expertise does not extend to "standard questions of administrative law," which would seem to include the appointment and removal challenges at issue here. 561 U.S. at 491. However, in *Elgin*, the Court appeared to accept that a constitutional claim that an agency could not or would not decide might fall within that agency's expertise if the agency could resolve the matter in favor of the regulated person on alternate grounds. 567 U.S. at 22–23. Although the Fifth Circuit has yet to interpret this portion of *Elgin*, the Second, Fourth, Seventh, and Eleventh Circuits have construed it to mean that if a favorable agency decision in the enforcement proceeding would moot the constitutional claim, then agency expertise can be usefully brought to bear on that claim. *Tilton*, 824 F.3d at 290; *see also Bennett*, 844 F.3d at 187–88; *Hill*, 825 F.3d at 1250; *Bebo*, 799 F.3d at 773. This is true even when the constitutional claim is a threshold question that "attack[s] the process rather than the result" of the administrative adjudication. *Jarkesy*, 803 F.3d at 25. If the agency finds in favor of the regulated person, there is no need for the courts to decide potentially far-reaching

constitutional questions. *See id.* (citing *Ashwander v. Tenn. Valley Auth.* 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)).

If the DEA Administrator finds that Morris & Dickson complied with the CSA, then this Court will avoid the constitutional question. This is particularly significant where, as here, a decision in Morris & Dickson's favor on the merits might call into question the constitutionality of all ongoing enforcement actions involving DEA ALJs. Therefore, in line with the persuasive authority of other courts to have considered similar questions, this Court finds that the possibility that a favorable decision at the agency level may moot Morris & Dickson's constitutional claim is an application of the DEA's expertise in enforcing and interpreting the CSA.

Each of the *Thunder Basin* factors weighs in favor of finding that Morris & Dickson's claims are of the type that Congress intended to channel through the review procedure established in the CSA. Because it is also fairly discernable that Congress intended claims arising during proceedings to revoke DEA registrations to pass from the DEA to an appeals court, this Court concludes that it lacks jurisdiction to entertain Morris & Dickson's constitutional claims.

IV.    **Conclusion**

It is fairly discernable from the CSA that Congress intended that disputes over registrations to distribute controlled substances be reviewed in an appeals court after the matter is adjudicated by the DEA. *See* 21 U.S.C. § 877. Because Morris & Dickson is already involved in that adjudication, if the company awaits the conclusion of the administrative

proceeding, it will then have access to a judicial forum where it will receive meaningful review of its constitutional claims. Although these claims are collateral to the question of Morris & Dickson's compliance with the CSA, they were raised in response to the revocation proceeding and so are not wholly collateral to the administrative process. And while the DEA might not pass upon the correctness of Morris & Dickson's constitutional claims, if the DEA finds in Morris & Dickson's favor, then the agency's expertise will have "obviate[d] all occasion for judicial review." *Standard Oil*, 449 U.S. at 244 n.11. The Second, Fourth, Seventh, and Eleventh Circuits have all concluded that district courts lack jurisdiction over separation-of-powers challenges to ongoing administrative enforcement when interpreting the provision of the Securities Exchange Act analogous to § 877 of the CSA. *See Bennett*, 844 F.3d at 188; *Hill*, 825 F.3d at 1252; *Tilton*, 824 F.3d at 291; *Bebo*, 799 F.3d at 775. In light of that persuasive authority and in the absence of contrary Fifth Circuit precedent, this Court concludes that the CSA precludes jurisdiction over Morris & Dickson's separation-of-powers claims.

This Court does not wish to minimize the time, effort, and expense that Morris & Dickson will incur in the process of defending its DEA registrations. Yet, as the Seventh Circuit has observed:

> Every person hoping to enjoin an ongoing administrative proceeding could make this argument, yet courts consistently require plaintiffs to use the administrative review schemes established by Congress. It is only in the exceptional cases . . . where courts allow plaintiffs to avoid the statutory review schemes prescribed by Congress. This is not such a case.

*Bebo*, 799 F.3d at 775 (internal citations omitted). And neither is Morris & Dickson's. Because this Court lacks jurisdiction to consider claims that Judge Dorman was unconstitutionally appointed and is unconstitutionally shielded from removal, this matter must be dismissed.[15]

    **IT IS ORDERED** that all claims by Morris & Dickson are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

    **THUS DONE AND SIGNED** in Shreveport, Louisiana, this _28th_ day of ___December___, _2018_.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[15] Because this Court determines that it lacks jurisdiction, the Court will not consider Defendants' alternative argument that this matter is not ripe for adjudication.